UNITED STATES of America

v.

Pasquale FALCONE et al.

Appeal of Pasquale FALCONIO in No. 73-2013.

Appeal of Wally BERGER in No. 73-2109.

Nos. 73-2013, 73-2109.

United States Court of Appeals, Third Circuit.

Argued May 28, 1974.

Decided Sept. 30, 1974.

Certiorari Denied Feb. 24, 1975.

See 95 S.Ct. 1338, 1339.

See also, D.C., 364 F.Supp. 877.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J., John J. Robinson, James A. Rothschild, Dept. of Justice, Washington, D. C., for appellee.

Kenneth J. McGuire, Stein, Bliabliss & Goldman, Newark, N. J., for appellant, Pasquale Falconio.

Graham Roskein, Newark, N. J., for appellant, Wally Berger.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

HANNUM, District Judge.

Appellants, Pasquale Falconio [1] and Wally Berger, were convicted in the United States District Court for the District of New Jersey on multiple counts of conspiracy to import [2] and distribute [3] heroin, violations of the Travel Act, [4] and use of interstate facilities in the furtherance of these conspiracies. [5]

The Government's proof at trial revealed that the appellants participated in a scheme to smuggle twenty pounds of heroin into the United States from Canada. The scheme was foiled by Royal Canadian Mounted Police working in league with United States authorities.

This appeal alleges numerous grounds for reversal of the convictions below.

---

1. Also known as Falcone, Falcon.

2. Title 21 U.S.C. § 952.

3. Title 21 U.S.C. § 841.

4. Title 18 U.S.C. § 1952.

5. Title 21 U.S.C. § 843(b).

For the sake of clarity, they can be grouped into two general categories: wiretap violations and trial errors.

## I. WIRETAP VIOLATIONS

Appellants contend that damaging evidence introduced at trial and obtained through the interception of telephonic communications (wiretaps) should have been suppressed.[6] Eight reasons are assigned for this contention: the federal wire interception statute, 18 U.S.C. §§ 2510–2520, (Title III Omnibus Crime Control and Safe Streets Act of 1968) is unconstitutional; the authorization of the application for the wiretap by the Attorney General for submission to the Court was defective; the finding of probable cause for the wiretap was insufficient; the finding of necessity for the wiretap was insufficient; [7] the Government failed to minimize non-relevant conversations; the Government failed to secure independent authorization for a pen register; the Government failed to seal promptly the tape recordings of the wiretaps; and the Government failed to comply with the delimiting Manual for the Conduct of Electronic Surveillance promulgated by the Attorney General.

■ We note at the outset that this Court has held the federal wire interception statute, 18 U.S.C. §§ 2510–2520, (Title III Omnibus Crime Control and Safe Streets Act of 1968) to be constitutional: United States v. Cafero, 473 F.2d 489 (3d Cir. 1972).[8] That holding stands. So far as the finding of necessity for

the wiretap, the Government's minimization of non-relevant conversations, and the Government's compliance with the delimiting Manual for the Conduct of Electronic Surveillance promulgated by the Attorney General, we affirm the thoughtful and thorough opinion of the district court on these issues.[9] The remaining issues merit discussion.

## AUTHORIZATION

The appellants contend that the wiretaps in the instant case were not properly authorized since the Attorney General's signature was affixed by Sol Lindenbaum, his Executive Assistant. 18 U.S.C. § 2516, the authorization provision, states that the Attorney General, or any Assistant Attorney General specifically designated by the Attorney General, may authorize applications for wiretaps. The recent companion cases of United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), examined this provision and set forth guidelines for what constitutes proper authorization.

In *Giordano,* the Court held that Title III does not permit the authorization of wiretap applications by the Attorney General's Executive Assistant, and that evidence secured through wiretaps so authorized should be suppressed.[10]

In *Chavez,* the Court held that misidentifying the Assistant Attorney Gen-

---

6. Evidence used at trial was obtained from wiretaps of two telephones. One telephone was registered to Paul Falcon, appellant. This wiretap commenced on August 28, 1972 and continued until October 16, 1972. The Order for this wiretap, as well as extensions thereof, was signed by The Honorable Frederick B. Lacey of the District Court of New Jersey. The other telephone was registered in Philadelphia, Pennsylvania to Michael De Vito. This wiretap commenced on November 30, 1972 and continued until December 18, 1972. The Honorable John Morgan Davis of the United States District Court for the Eastern District of Pennsylvania executed the Order authorizing this wiretap as well as the subsequent extension on December 15, 1972. Thereafter, appellants filed a motion to sup-

press the evidence secured through the use of these wiretaps which resulted in a twelve day suppression hearing commencing on August 27, 1973. The trial court denied the motion, 364 F.Supp. 877 (D.N.J.1973), and the trial proceeded.

7. We include in this reason appellants' additional reason that the Government failed to advise the District Court of the existence of an informer at the center of the alleged conspiracy.

8. Accord, United States v. Whitaker, 474 F.2d 1246 (3d Cir. 1973).

9. United States v. Falcone, 364 F.Supp. 877 (D.N.J.1973).

10. 416 U.S. at 530, 94 S.Ct. at 1834.

eral as the official authorizing the wiretap application when the Attorney General, himself, had given the approval does not run afoul of Title III, and, therefore, does not require suppression of evidence so obtained.[11]

It is clear from a reading of these cases that the important consideration is not whose name appears on the authorization, and certainly not who signed the authorization. Rather, the important consideration is who actually granted the authorization for the wiretaps.[12]

■ Turning to the instant case, Sol Lindenbaum, Executive Assistant to the Attorney General, signed the name of the then Attorney General, Richard G. Kleindienst, to the authorization for the wiretap.[13] This act, however, was preceded by a telephone conversation between Lindenbaum and the Attorney General during which the former advised the latter of the contents of a memorandum, recommending that the authorization be granted, prepared by the Assistant Attorney General in charge of the Criminal Division, Henry Peterson.[14] The Attorney General approved the request and directed Mr. Lindebaum to sign the Attorney General's name to the authorization and to. inform the Assistant Attorney General of the approval.[15] Three days later the Attorney General, himself, entered a file memorandum verifying the verbal authorization he had given to Mr. Lindenbaum.[16]

From these facts, viewed in the light of *Giordano* and *Chavez*, we conclude that the authorization here was proper. Crucial to this conclusion is the fact that the Attorney General, fully aware of the facts of the specific case, had personally authorized the wiretap.

### PROBABLE CAUSE

■ The appellants contend that probable cause was lacking for the issuance of the order for the wiretaps. In support of this contention, appellants submit that Berger v. New York, 388 U. S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1966) require a more vigorous degree of probable cause for a wiretap than ordinarily required for a search warrant, and that this more vigorous degree of probable cause was lacking. We reject this submission and, in addition, hold that the facts contained in the wiretap applications meet the standards for what constitutes probable cause. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Probable cause is not a matter of degree. Although *Berger* and *Katz* call for extra vigilance in the supervision of electronic eavesdropping,[17] neither case separates probable cause into degrees. Moreover, no special probable cause requirement can be found in the statutory scheme. 18 U.S.C. § 2518(3) (a), (b) and (d). Certainly if a higher degree of probable cause were intended, Congress would have so stated.

### PEN REGISTER

The next question presented for resolution is whether a separate order authorizing the use of a pen register[18] is

---

11. 416 U.S. at 568, 94 S.Ct. at 1853.

12. See, United States v. Chavez, 568 U.S. at 416, 94 S.Ct. at 1853 and in particular Footnote 2.

13. Appendix to the Brief of Appellant, Paul Falconio, at A–1 (hereinafter referred to as Appendix).

14. Appendix at A–3.

15. Appendix at A–3.

16. Brief of Appellees at 16.

17. E. g., "The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping." Berger v. New York, 388 U.S. 41, 56, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040.

18. "A pen register is a mechanical device attached to a given telephone line and usually installed at a central telephone facility. It records on a paper tape all numbers dialed from that line. It does not identify the telephone numbers from which incoming calls

required when a valid order authorizing a simultaneous wiretap has issued? That is to say, is the authorization for a wiretap sufficient to permit the concomitant implementation of a pen register?

In the instant case, the Government, after securing an order for a wiretap on Falconio's telephone, installed both a tape recorder and a pen register. Separate authorization for the pen register was never obtained. Appellants contend that the use of the pen register under these circumstances requires suppression of evidence so obtained. For the reasons which follow we find this contention unpersuasive.

■ The threshold issue is whether use of a pen register is subject to the provisions of 18 U.S.C. § 2518 which requires authorization for the interception of wire or oral communications? "Intercept" means the ". . . aural acquisition of the contents of any wire or oral communication. . ." 18 U.S.C. § 2510(4). An "aural acquisition" by definition engages the sense of hearing.[19] Since a pen register does not possess this sense, it is not an interception within the meaning of 18 U.S.C. § 2510(4), and therefore not subject to the authorization provisions of 18 U.S.C. § 2518. United States v. Giordano, 416 U.S. 553, 94 S.Ct. 1845 (1974) (dissenting opinion); United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), aff'd sub. nom., United States v. Giordano, 469 F.2d 522 (4th Cir. 1972) rev'd on other grounds, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970), rev'd on other grounds, 472 F.2d 973 (5th Cir. 1973).

■ The next issue to be determined is whether 47 U.S.C. § 605 prohibits the use of a pen register. For two reasons we hold that it does not. First, § 605 was amended in 1968 to proscribe the interception of "any radio communication", this amendment clearly omits telephonic communications. Second, the legislative history of the 1968 Amendment to § 605 reveals that Congress intended to shift all control of electronic surveillance operations to 18 U.S.C. §§ 2510–2520. 1968 U.S.Code Cong. & Admin.News, p. 2178. Thus, having concluded that § 605 does not now control the use of pen registers, we set to one side those cases antecedent to the 1968 amendment which held otherwise and upon which the appellants mistakenly rely.[20] We do not conclude from this analysis that no authorization for the use of pen registers is required.[21] We only conclude that pen registers are neither prohibited by § 605 nor require authorization under § 2518.

■ Nor must we decide, under the facts of this case, what authorization is necessary when a pen register is used alone.[22] However, when used in conjunction with a wiretap, we conclude that an order permitting interception under Title III for a wiretap provides sufficient authorization for the use of a pen register, and no separate order for the latter is necessary. The reasoning for this conclusion is based on an analysis of the operation of a pen register.

A telephone number is only a symbol for a series of electrical impulses. When a telephone number is dialed from a wiretapped phone, the pen register and

originate, nor does it reveal whether any call, either incoming or outgoing, was completed. Its use does not involve any monitoring of telephone conversations." United States v. Giordano, 416 U.S. at 549, 94 S.Ct. at 1842 (dissenting opinion).

19. The Oxford English Dictionary defines "aural" as: (1) Of or pertaining to the organ of hearing; (2) Received or perceived by the ear.

20. United States v. Dote, 371 F.2d 176 (7th Cir. 1966); United States v. Caplan, 255 F.Supp. 805 (E.D.Mich.1966).

21. Clearly, the permissibility of its use by law enforcement authorities would depend "entirely on compliance with the constitutional requirements of the Fourth Amendment." United States v. Giordano, 416 U.S. 553, 94 S.Ct. at 1845 (dissenting opinion).

22. See, United States v. King, 478 F.2d 494 (9th Cir. 1973).

the tape recorder are activated simultaneously. Both record the dialing of the phone. And both can be used to determine the telephone number dialed.[23] The pen register records the electrical impulse and automatically translates it back into the number dialed. The tape recorder records the aural manifestation of the electrical impulse which also discloses, if played at a slower speed and examined by an expert, the telephone number dialed.[24] A pen register functions to facilitate the decipherment of the number dialed. It is a mechanical refinement which translates into a different "language" that which has been monitored already. Simply stated, the pen register avoids a mechanical step; it translates automatically and avoids the interpreter.[25]

We hold for the aforementioned reasons that where a valid wiretap order has issued, use of a pen register is comprehended within the terms of that order.

## DELAY IN SEALING THE TAPES

Appellants finally contend that the wiretap evidence should not have been admitted because it was not promptly sealed as required by 18 U.S.C. § 2518(8)(a). This section provides that "...[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions ...".

There is no doubt but that the tapes were not sealed in accordance with the statute.[26] However, it does not follow therefrom that the evidence obtained must be suppressed.[27] As in United States v. Giordano, *supra,* and United States v. Chavez, *supra,* we must look to the statutory scheme to determine if

Congress has provided that suppression is required for this procedural error.

18 U.S.C. § 2515 provides that wiretap evidence may not be introduced at a criminal trial, "if the disclosure of that information would be in violation of this chapter." Those violations requiring suppression are provided for in 18 U.S.C. § 2518(10)(a):

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval."

Paragraphs (ii) and (iii) are inapplicable because the sealing requirement is statutory and not part of the order. Therefore, if suppression is required, we must find it in paragraph (i). United States v. Giordano, *supra,* holds that paragraph (i) includes every "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." 416 U.S. at 527, 94 S.Ct. at 1832.

Viewed in this framework, the issue becomes whether the sealing requirement limits the use of interception procedures?

 The legislative history reveals that the sealing requirement was intended to insure the integrity of the tapes *after interception.* (Emphasis supplied). 1968 U.S.Code Cong. & Adm. News, p. 2193–2194. The sealing requirement is in nowise "to limit the use of interception procedures ..."

---

23. United States v. King, 335 F.Supp. 523, 549 (S.D.Cal.1971).

24. *Id.*

25. Nor is the analysis affected by a "touch tone" phone and use of a pen register equipped with a touch tone decoder. In this regard, see, United States v. Focarile, 340 F.Supp. 1033, 1039 (D.Md.1972).

26. Brief of Appellees at page 27.

27. "[In *Giordano*] ... we did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communcations 'unlawful.' To establish such a rule would be at odds with the statute itself." United States v. Chavez, 416 U.S. at 574, 94 S.Ct. at 1856.

Rather, its function is to maintain the integrity of the tapes for evidentiary purposes. We conclude, therefrom, that the sealing requirement is not to limit the use of interception procedures, and, that failure to seal promptly does not render the communication "unlawfully intercepted," and therefore such failure does not necessitate suppression under the statute.

A second consideration strongly supports this conclusion. 18 U.S.C. § 2518 (8)(a) provides that the "presence of [a] seal . . . or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use . . . of any [wiretap] . . ." By this provision Congress has provided for an alternative to the sealing requirement. It would follow from such an alternative that failure to seal the tapes promptly is not such a violation that requires suppression as a matter of law.

In United States v. Poeta, 455 F.2d 117 (2d Cir. 1972), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972), police confusion over the applicable law was held a sufficient explanation to overcome the absence of a seal. Here administrative delay may also be a satisfactory explanation. The crucial factor, however, is the integrity of the tapes themselves. This fact must be proved to the trial judge. In the case at bar, after an extensive pre-trial hearing and evidence at trial the court below made a specific finding of fact that the tapes had not been tampered with.[28]

■ Therefore, all we hold is that where the trial court has found that the integrity of the tapes is pure, a delay in sealing the tapes is not, in and of itself, sufficient reason to suppress the evidence obtained therefrom.

We hasten to add that this holding, of course, does not deprecate the importance of the sealing requirement. Certainly, it should be complied with in all respects. As this case so aptly demonstrates, compliance would have avoided considerable uncertainty and delay.

## II. TRIAL ERRORS

In addition to the alleged violations in the gathering of evidence, appellants alleged that the trial court committed reversible error at trial and at sentencing.

At trial, testimony was admitted to the effect that appellant, Falconio, had been previously involved in a separate heroin transaction not the subject matter of this case. Appellant contends that this testimony should not have been admitted since it was evidence only of prior criminal conduct.

■ Although inadmissible to show a mere propensity or disposition to commit crime, evidence of other crimes is admissible to show one's intent, plan, scheme, design, or *modus operandi*. United States v. Todaro, 448 F.2d 64 (3d Cir. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 924, 30 L.Ed.2d 732 (1972); United States v. Carter, 401 F. 2d 748 (3d Cir. 1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797 (1968); United States v. Stirone, 262 F.2d 571 (3d Cir. 1958), rev'd on other grounds, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Without commenting in detail, the evidence complained of showed an intent on the part of Falconio to sell heroin to one of his co-conspirators, and, further, showed a pre-existing business relationship between the two, evidence highly probative of the existence of a conspiracy. Moreover, since the evidence indicated that Falconio owed this co-conspirator $30,000.00 from the previous narcotics transaction, the evidence was probative to show motive for the subsequent narcotics transaction for which he was prosecuted. Thus, there being sufficient grounds for the admission of this evidence, there is no error.

■ Next appellants allege that the trial court erred when it failed to grant their motion for a mistrial following a question propounded by the Government Attorney and directed to one of its witnesses. Specifically, the Government

28. Transcript at 770.

Attorney asked of the witness, a chemist who was called to testify about the size and quality of average street sales of heroin, whether the narcotic substances in this case were purchased by undercover agents acting for the City of Newark in a drive on narcotics. It is contended that the reference to "drive on narcotics" aroused the passion of the jury against the appellants because of the narcotic problems existent in the Newark area.

Objection to this question was sustained and the jury was instructed to disregard it.[29] In addition, the court made inquiry to determine whether any jurors had been prejudiced by this reference. A review of the record makes clear that an appropriate instruction was given and a mistrial was not required in these circumstances.

Finally, appellant, Falconio, contends that the trial judge should have recused himself before sentencing. In this regard, he filed an affidavit pursuant to 28 U.S.C. § 144.

■■■ For a motion to recuse to be granted, the affidavit must allege bias or prejudice from a source other than the Court proceedings in the case, United States v. Grinnell Corp., 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Tynan v. United States, 126 U.S.App. D.C. 206, 376 F.2d 761 (1967). As we said in United States v. Thompson, "The facts [in the affidavit] must show the bias is personal, as opposed to judicial, in nature." Appellant did not allege in his affidavit that the trial judge's bias was extrajudicial. An allegation of "judicial" bias is not grounds for a motion to recuse. United States v. Thompson, 483 F.2d 527, 529 (3d Cir. 1973). The motion was properly denied.

The Court finds the remaining contentions in this appeal without merit. The Court also finds that the trial was fair and free of error. Thus, the convictions of the appellants, Falconio and Berger, must be and are affirmed.

ROSENN, Circuit Judge (dissenting).

I respectfully dissent because I believe that the Government's inability to provide a "satisfactory explanation" for its failure to have the recordings sealed "immediately" by the court requires that the recordings be suppressed in accordance with the language of the statute, 18 U.S.C. § 2518(8)(a).

Two wiretaps are involved in this case. The first, the Fort Lee wiretap, was authorized by Judge Lacey of the District Court of New Jersey on August 28, 1972. The authorization was valid for twenty days, and successive twenty-day extensions were granted on September 15 and October 5. The wiretap was removed on October 16, although the final extension did not expire until October 25. Nevertheless, the tapes were not presented to the court for sealing until December 1, forty-five days after the removal of the wiretap.

The second wiretap, the Philadelphia wiretap, was authorized by Judge Davis of the Eastern District of Pennsylvania on November 30, 1972. The initial fifteen-day authorization was extended for an additional fifteen days on December 15. Actual surveillance terminated on December 15, and the authorization expired on December 30. However, the tapes were not presented to the court for sealing until January 30, 1973, also forty-five days after the removal of this wiretap.

Eighteen U.S.C. § 2518(8)(a) provides specifically that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions."[1] (Emphasis supplied.) In both

29. Transcript at 1686 to 1695, especially 1695.

1. 18 U.S.C. § 2518(8)(a) states:
 (8)(a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon

of the wiretaps before us it cannot be said that the protracted delay in presenting the recordings to the appropriate court for sealing was consistent with the explicit statutory requirement that the sealing follow "immediately upon the expiration of the period of the order, or extensions thereof . . . ." The majority's conclusion that in this case "[t]here is no doubt but that the tapes were not sealed in accordance with the statute" is, therefore, inescapable.[2]

Congress clearly intended that violation of the § 2518(8)(a) sealing requirement be governed by the final sentence of § 2518(8)(a).[3] This provision states that "[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, *shall be a prerequisite* for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom . . . ."[4] (Emphasis supplied.)

I therefore turn to the question of whether the Government has provided the "satisfactory explanation" for the protracted delays in sealing the tapes which is a "prerequisite" to their admissibility into evidence.[5] The Government's asserted explanation for the delay in sealing the tapes was that "the tapes were used to make a composite tape and to transcribe certain of the tapes." Brief for Appellee at 27.

I do not believe that this is in any sense a "satisfactory" explanation within the contemplation of the statute. The Government's witnesses testified at trial that there was always a "back-up recorder" simultaneously activated with the primary recorder by the lifting of the telephone receiver. Except for such occasions when one or the other of the machines malfunctioned, therefore, two recordings were made of all intercepted conversations. There was thus a duplicate tape available from which the Government could have made a composite tape and transcribed the conversations. The Government has not offered any reason why it could not have immediately submitted *one* of the sets of tapes for sealing and used the other set to make the composite tape.

Even were all or some of the conversations recorded on only a single set of tapes, the Government's delay of over a month in sealing the tapes is inexcusable. The penultimate sentence of § 2518(8)(a), *see* note 1 *supra,* specifically provides that duplicate recordings may be made by the Government for use or disclosure. The Government could have readily copied the tapes by high speed reproduction methods immediately after

---

the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

2. In light of this conclusion it is unnecessary to consider at this time the defendant's contention that the tapes then available must be sealed immediately upon the expiration of the original authorization as well as upon the expiration of each extension of the original order.

3. As the majority properly notes, a violation of the sealing requirement does not mean that "the communication was unlawfully intercepted," and so suppression is not required under § 2518(10)(a).

4. *See* note 1 *supra.*

5. I agree with the implication in United States v. Poeta, 455 F.2d 117, 122 (2d Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972), that § 2518(8)(a) requires that a satisfactory explanation be provided not only for the Government's total failure to obtain a seal for the tapes, but also for a failure "immediately" to seal the tapes. Any other construction of the statutory language would completely undercut the statutory purpose of protecting the integrity of the tapes.

the surveillance on each telephone was completed, and thereupon presented the original copies to the court for sealing. The feasibility of this procedure is apparent in light of the Government testimony at the pre-trial suppression hearing that the originals of the tapes were reproduced for defense counsel by high speed methods while the Government agent waited.

The only case of which I am aware which treats the question of what constitutes a "satisfactory explanation" for delayed sealing of tapes under § 2518(8)(a) is United States v. Poeta, 455 F.2d 117 (2d Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972). In that case the state court judge who had issued a wiretap order was on vacation when the order expired. Because of a provision of the New York Criminal Procedural Law, the police believed that only that same judge could accept the tapes for sealing. Finally, 13 days after the wiretap order had expired, the recordings were brought to another state judge who ordered them sealed. The court stated:

> We are satisfied that the delay of the police in delivering the tapes for sealing was entirely excusable in light of the wording of the New York statute. No claim is made that the tapes were altered or that the appellant was in any way prejudiced by the delay.

455 F.2d at 122.

In the instant case, unlike *Poeta,* the Government does not and could not contend that there is any ambiguity in the explicit statutory requirement that the tapes be "immediately" sealed. The delays in sealing the tapes were about a month and one-half in each instance in contrast to the 13 days in *Poeta.* More-

over, in contrast to *Poeta,* the defendants in the instant case did raise the possibility at the suppression hearing that certain of the tapes had been altered, although the district court found this contention to be without merit.[6] I believe, therefore,. that *Poeta* does not provide support for the majority's position.

The majority appears to hold that even though the Government may not have provided a satisfactory explanation for the delay in sealing the tapes in this case, the tapes were properly admitted into evidence because of the district court's finding of fact that the tapes had not been tampered with before being sealed. This rationale would appear to excuse even a total failure by the Government to seal the tapes and a total failure by the Government to provide an explanation for the lack of a seal.

I do not believe that this rationale, which is in effect a "harmless error" rule, can be the stirrup upon which the Government can mount its effort to avoid the consequences of its failure to comply with the explicit statutory requirement that the tapes be immediately sealed. I find support for this view in the recent cases of United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), and, United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). In those cases the Supreme Court dealt with the question of what constitutes an "unlawful" interception which must be suppressed under § 2518(10)(a). The Court held that interception was unlawful under that statutory provision

> where there is a failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the

---

6. In moving at trial for suppression of the tapes, counsel for the defense pointed to undisputed evidence at the pre-trial minimization hearing that (1) a privileged conversation (which should not have been recorded) which a Government agent testified to having overheard when previously listening to the tapes did not appear on the tape when played in open court, and (2) a conversation listed in the Government's log did not appear on the tapes, and the beginning of the following conversation which was on the tapes appeared to be missing.

The court found that there was "no basis at all in the entire record" to doubt the testimony of the Government agent in charge of the case that there was no tampering with the tapes.

use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

416 U.S. at 527, 94 S.Ct. at 1832.

In the instant case, there is no need to apply this standard because § 2518(8)(a), rather than § 2518(10)(a), applies. Nevertheless, to the extent that the standard is useful in determining whether an implied exception should be read into the clear language of § 2518(8)(a), I believe that the quoted language supports my position that the wiretaps in this case must be suppressed. Section 2518(8)(a) contains numerous procedures for the handling of wiretap records. The legislative history of the section makes clear that these requirements were intended as "safeguards designed to insure that accurate records will be kept of intercepted communications." S. Rep.No.1097, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin.News 2112, 2193. One of the reasons for these requirements, including the sealing requirement, is obviously to protect citizens, when they are called upon to defend themselves, from intentional or inadvertent alterations of the wiretap records secured by means of this extraordinary and secretive investigative device. Such alterations may be very difficult to detect, and fact finding by the district court is inherently less reliable than a strict sealing requirement.[7] Perhaps in recognition of these possibilities, Congress expressly selected a strict requirement that the tapes not be admitted into evidence unless a satisfactory explanation is offered for a failure to seal them. Congress having expressly chosen a standard offering significant protection to the citizen, I believe, in the language of *Giordano*, that the strict sealing requirement "directly and substantially implements the congressional

intention" of maintaining the integrity of the tapes. Therefore, it is my view that the majority is unjustified in creating an exception to the express language of § 2518(8)(a).

I recognize that adoption of my position as expressed in this dissent would put to naught in this case considerable investigative and prosecutorial effort by the Government, as well as considerable judicial effort expended in the lengthy hearings and trial in the district court. Moreover, I am aware that some charge courts with unjustifiably expanding the rights of the accused beyond the parameters intended by Congress or by the framers of the Constitution. In this case, however, it is Congress that has expressly spoken in favor of protecting an accused whose conversations have been secretly recorded. It is Congress that has in its wisdom expressly stated that under the circumstances before us the recorded conversations may not be admitted into evidence. The principle of protecting a citizen from the possibilities of altering or tampering with his intercepted conversation recorded by secret devices is so precious that it should not be diluted by any inclination to excuse the Government from its own serious dereliction. The Supreme Court's recent holding in *Giordano* that wiretaps which were not personally authorized by the Attorney General, as specifically required by statute, must be suppressed, affected 60 cases, 626 defendants and immeasurable effort and expense on the part of the Organized Crime Section of the Criminal Division of the Justice Department. *See* United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849 (1974) (Douglas, J., concurring and dissenting). Nonetheless, the Supreme Court required adherence to the terms of the Congressional statute. We can do no less in this case. I would therefore reverse the convictions at issue on this appeal.

---

7. Of course, fact finding may still be required even if the Government does comply with the sealing requirement, since the tapes need not be sealed until all the recordings permitted pursuant to the same court order have been made. Congress' failure to provide absolute protection to the defendant, however, does not justify our weakening the protective structure that Congress does provide.