**UNITED STATES of America**

v.

**Gaetano VASTOLA, et al., Defendants.**

**Crim. A. No. 86–301(SSB).**

United States District Court,
D. New Jersey.

Aug. 16, 1991.

Michael Chertoff, U.S. Atty. by Bruce Repetto and Marion Percell, Asst. U.S. Attys., Newark, N.J., for the U.S.

Michael Rosen, Joy Vastola, New York City (Herald Price Fahringer, Diarmuid White, of counsel), for defendant Vastola.

Rochman, Platzer, Fallick and Rosmarin by Barry M. Fallick, New York City, for defendant Saka.

## OPINION

BROTMAN, District Judge.

## I. INTRODUCTION

Prior to their trial on racketeering and extortion charges, defendants Gaetano Vastola, Elias Saka, and their co-defendants moved, *inter alia*, to suppress certain electronic surveillance tapes contending that the tapes had not been sealed "immediately" as required by Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Wiretap Act"), as amended, at 18 U.S.C. § 2510 *et seq.* Relying upon the opinion of the Court of Appeals for the Third Circuit in *United States v. Falcone*, 505 F.2d 478 (3d Cir.1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1338, 1339, 43 L.Ed.2d 432 (1975), the court denied the motion to suppress. This case is now before the court upon remand from the Third Circuit for the court to determine, in light of the Supreme Court's decision in *United States v. Ojeda Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990), whether the government is now free to offer an explanation for its delay in sealing intercepted communication tapes as required by the Wiretap Act. If the court determines that the government should be able to offer a reason for the sealing delay, the court must evaluate the explanation offered to determine whether it was the *actual* reason for the delay, and, if so, whether the *actual* reason constitutes a *satisfactory* explanation of why the sealing delay occurred.

## II. FACTS AND PROCEDURE

The extensive factual and procedural history of this complex case has been set forth in several reported opinions, commencing with this court's opinion on defendants' pretrial omnibus motion in which the court, *inter alia*, denied defendants' motion to suppress certain electronic surveillance tapes, *United States v. Vastola*, 670 F.Supp. 1244 (D.N.J.1987) (*"Vastola I"*), the decision of the Third Circuit essentially affirming the convictions of Vastola and Saka,[1] *United States v. Vastola*, 899 F.2d 211 (3d Cir.1990) (*"Vastola II"*), and the decision of the Third Circuit remanding the case to this court in light of the Supreme

---

1. The Third Circuit reversed this court on two counts concerning Vastola, but affirmed the remainder of Vastola's and Saka's convictions.

Court's opinion in *Ojeda Rios, United States v. Vastola,* 915 F.2d 865 (3d Cir. 1990) ("*Vastola* III"). Rather than reiterate the lengthy history of this matter, the court will only address the facts and procedure relevant to the issue to be addressed on remand.

Vastola and Saka were indicted along with 19 other defendants for a variety of crimes. The counts against Vastola and Saka charged them with racketeering in violation of 18 U.S.C. § 1962 and extortion in violation of 18 U.S.C. § 894. The 21 defendants jointly filed an omnibus motion on a plethora of issues prior to trial. Among the relief sought by defendants was the suppression of 185 electronic surveillance tapes obtained from the government's surveillance of the Video Warehouse in West Long Branch, New Jersey, between March 15, 1985 and May 31, 1985. The West Long Branch Video Warehouse tapes were relevant to the government's case against Vastola and Saka as the Video Warehouse was the headquarters of their racketeering enterprise. Defendants contended that the 185 tapes should be suppressed pursuant to the Wiretap Act, 18 U.S.C. § 2518(8)(a), as they were not sealed until July 15, 1985, which was 45 days after the final interception at the West Long Branch Video Warehouse location on May 31, 1985, and 32 days after the June 13, 1985 expiration date of the order authorizing that surveillance. Two of those tapes are no longer relevant to this proceeding.[2]

The West Long Branch Video Warehouse surveillance commenced when the District Court of New Jersey authorized the interception of wire and oral communications at that location on March 15, 1985. Authorization for that surveillance was extended on April 16, 1985, and again on May 14, 1985. The order authorizing surveillance at that location expired on June 13, 1985, and interception at that location ceased on May 31, 1985 when the Video Warehouse moved to a different premises in Neptune City, New Jersey. On June 26, 1985, the District Court authorized the government to continue surveillance of the Video Warehouse at its new location.

On July 15, 1985, the government presented 183 tapes from the West Long Branch Video Warehouse for sealing. This sealing was untimely under the Wiretap Act. *Vastola* III, 915 F.2d at 875 ("We conclude that a sealing delay indeed occurred as the West Long Branch tapes should have been sealed either as soon as was practical after May 31, 1985, when the actual surveillance ended, or as soon as practical after June 13, 1985, when the final extension order expired." (footnote omitted)).

In considering the defendants' motion to suppress the West Long Branch Video Warehouse tapes because the government had failed to provide a satisfactory explanation for the sealing delay, this court relied upon *Falcone*, 505 F.2d at 484, which held that suppression is not an appropriate remedy for a delay in sealing electronic surveillance tapes unless it can be shown that the physical integrity of the tapes was compromised. As the government demonstrated by clear and convincing evidence that the physical integrity of the tapes had been maintained, this court denied defendants' motion to suppress. *Vastola* I, 670 F.Supp. at 1282. In that same opinion, the court severed the trial of defendants into different groups. *Vastola* I, 670 F.Supp. at 1261. Vastola and Saka were tried together, and the jury found them guilty of various racketeering and extortion charges.

Upon appeal to the Third Circuit, the Third Circuit reversed this court in certain respects, but essentially affirmed the judgments of conviction for both defendants. Vastola and Saka raised the sealing issue in their appeal, but the Third Circuit rejected their arguments, merely noting that this court's decision denying suppression of the

**2.** It was later discovered that due to a clerical error two of the 185 tapes were not sealed until August 19, 1986, well over a year after the termination of the surveillance at the West Long Branch Video Warehouse. As the Third Circuit ruled that a satisfactory explanation has been offered for the sealing delay of those two tapes, *Vastola* III, 915 F.2d at 875 n. 17, the court need only concern itself with the 183 tapes sealed on July 15, 1985.

tapes in question was in line with *Falcone*. *Vastola* II, 899 F.2d at 239 n. 33.

On June 25, 1990, the Supreme Court vacated the judgment of the Third Circuit affirming most of Vastola's and Saka's convictions, and remanded this case to the Third Circuit for further consideration in light of *United States v. Ojeda Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990). In *Ojeda Rios*, the Supreme Court expressly overruled *Falcone*, and held that suppression is required when the government fails to offer a "satisfactory explanation" for a delay in sealing authorized electronic surveillance tapes in accordance with 18 U.S.C. § 2518(8)(a). *Ojeda Rios*, 495 U.S. at —— n. 5, 110 S.Ct. at 1850 n. 5. The government must "explain not only why a delay occurred but also why it is excusable." *Ojeda Rios*, 495 U.S. at ——, 110 S.Ct. at 1850. The government's explanation for the delay is "satisfactory" only when it is the actual reason for the delay, *Ojeda Rios*, 495 U.S. at ——, 110 S.Ct. at 1852 (Connor, J., concurring), and is objectively reasonable at the time of the sealing delay. *Ojeda Rios*, 495 U.S. at ——, 110 S.Ct. at 1851.

On remand before the Third Circuit, the government offered four arguments. First, it contended that the June 26, 1985 order authorizing electronic surveillance at the Neptune City Video Warehouse could be construed as an extension of the orders authorizing surveillance at the West Long Branch Video Warehouse, and as an extension of the earlier orders, there was no sealing delay as its obligation to seal did not arise under the Wiretap Act until the interception at the Neptune City Video Warehouse ceased. Second, even if the June 26, 1985 order could not be characterized as an extension of the West Long Branch Video Warehouse orders, the attorneys in charge of the electronic surveillance reasonably believed, based on precedent at the time of the taping, that under the Wiretap Act the sealing obligation did not arise until the conclusion of the entire Videotape Warehouse investigation. Hence, the government asked the Third Circuit to find that the government had

furnished a "satisfactory explanation" for the sealing delay. Third, the government contended that the Third Circuit need not resolve the sealing issue as without the West Long Branch Video Warehouse tapes, there would still be sufficient information to sustain Vastola and Saka's convictions. Finally, the government asked the Third Circuit to remand for further inquiry as to the reason for the delay if the Third Circuit could not at that juncture reinstate Vastola and Saka's convictions. *Vastola* III, 915 F.2d at 873–74.

Vastola and Saka vigorously contested the government's assertions, and contended that the government should not be free to offer any explanation for the sealing delay as it had failed to offer an explanation at the time of the motion to suppress. In addition, they argued that there was no basis in fact for the government's argument that the June 26, 1985 order authorizing the Neptune City Video Warehouse surveillance was an extension of the earlier orders authorizing the West Long Branch Video Warehouse surveillance, and that traditional notions of waiver should bar the government from offering such an explanation as the government had argued at the time of the original suppression motion that a delay had occurred but *Falcone* did not require the tapes' suppression.

After considering the arguments of the government and the defendants, the Third Circuit remanded the matter to this court. The Third Circuit rejected outright the government's first argument that the June 26, 1985 order authorizing interception at the Neptune City Video Warehouse was an extension of the prior orders authorizing surveillance at the West Long Branch Video Warehouse, stating that "the statute unambiguously rules out this possibility." *Vastola* III, 915 F.2d at 874 (footnote omitted). With respect to the government's second argument, the Third Circuit found on the record before it that it could not accept the government's argument that the government had already offered a satisfactory explanation for the sealing delay, namely that the attorneys in charge of the surveillance did not believe that their sealing obligations under the statute arose un-

til after the investigation was complete. *Vastola* III, 915 F.2d at 875. The Third Circuit did not reach the government's third argument that the admission of the tapes constituted harmless error. *Vastola* III, 915 F.2d at 876. Instead, it remanded this matter to this court to determine whether the government is now free under *Ojeda Rios* to offer an explanation for the sealing delay, and if so, to hear evidence as to the actual reason for the delay. *Vastola* III, 915 F.2d at 876.

Without deciding whether or not the government should be permitted to offer an explanation, the court conducted a hearing on December 14, 1990 at which the government presented evidence as to the actual reason for the sealing delay.[3] Despite defendants' objections, the court heard the testimony offered by the government in order to expedite these proceedings in case the court determined that the government should be permitted to offer an explanation for the sealing delay.[4]

## III. DISCUSSION

The Wiretap Act provides in pertinent part that "[i]mmediately upon the expiration of the period of the order, or extensions thereof, such recordings [of intercepted electronic communications] shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a). The Act further provides that, "[t]he presences of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom ..." 18 U.S.C. § 2518(8)(a). As the Third Circuit held that there was a delay in the sealing of the

West Long Branch Video Warehouse tapes, and that it could not on the record before it rule that the government had offered a satisfactory explanation for the delay, *Vastola* III, 915 F.2d at 874–75, this court must determine whether the government is entitled to offer an explanation for the sealing delay at this time.

### A. SHOULD THE GOVERNMENT BE PERMITTED TO OFFER AN EXPLANATION FOR THE SEALING DELAY?

Vastola and Saka essentially make two arguments against permitting the government to offer an explanation for the sealing delay at this time. The court will address each argument in turn.

First, defendants contend that at the time they moved to suppress the tapes, the government should have offered an explanation for the sealing delay. Instead, the government merely asserted: "It is clearly the law in this circuit that a delay in sealing tapes is not, in and of itself, sufficient grounds for suppression as long as the integrity of the tape recordings is preserved. *United States v. Falcone*, 505 F.2d at 484." Government's June 18, 1987 Brief in Opposition to Defendant's Motion to Suppress the Fruits of Electronic Surveillance at 110. Defendants claim that *Falcone* did not mitigate the requirement of 18 U.S.C. § 2518(8)(a) which compels the government to offer a "satisfactory explanation" for a sealing delay, and that the government's failure to offer any reason for the sealing delay in 1987 precludes it from doing so at this time.

Defendants raised the same argument before the Third Circuit. The Third Circuit

---

**3.** Defendant Dominick Canterino sought to join defendants Vastola and Saka at the proceedings before this court on remand. Without deciding whether Canterino was entitled to participate, the court allowed him to participate at the December 14, 1990 hearing. In an order dated May 20, 1991, the court determined that Canterino was not entitled to participate in the proceedings upon remand as he had not raised the issue of the sealing delay in his appeal to the Third Circuit and because the new rule announced in *Ojeda Rios* did not apply to defen-

dant Canterino pursuant to *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as his judgment was final at the time of the *Ojeda Rios* decision.

**4.** The court in *United States v. Gallagher* similarly heard the government's evidence prior to determining whether it should consider that evidence in order to create a complete record for appeal. *Gallagher*, 751 F.Supp. 481, 484 (D.N.J.1990).

found "that [the government's] failure in the district court to offer evidence concerning the circumstances of the sealing delay should not necessarily now foreclose it from offering such evidence before the district court." *Vastola* III, 915 F.2d at 875. In that opinion, the Third Circuit noted that this court could find that any reliance the government placed on *Falcone* was not unreasonable, particularly as the government correctly predicted that the Third Circuit would adhere to that decision. *Vastola* III, 915 F.2d at 876. The Third Circuit directed this court to exercise its discretion as to whether to allow the government to present evidence on the sealing delay, likening the instant situation to a motion of the government to reopen, citing *United States v. Blankenship*, 775 F.2d 735, 740–41 (6th Cir.1985). *Vastola* III, 915 F.2d at 876.

In *United States v. Gallagher*, 751 F.Supp. 481 (D.N.J.1990), the court had the opportunity to decide whether or not it should exercise its discretion to permit the government to present evidence concerning its reasons for the sealing delay in that case. After analyzing the *Blankenship* factors, the *Gallagher* court concluded "that the government should be permitted to give evidence disclosing the reasons for the delay in sealing the pertinent tapes and addressing the question of whether the delay was excusable." *Gallagher*, 751 F.Supp. at 486. The court found that the government's application to introduce the evidence was timely as there was no reason to introduce the evidence at the original suppression hearing as pursuant to *Falcone* the motion to suppress could be determined without such evidence. *Gallagher*, 751 F.Supp. at 486. It further found that the reason the government did not present this evidence at the suppression hearing as was "that under the then-prevailing law in this circuit the evidence was unnecessary for a resolution of the motion, a legitimate reason." *Gallagher*, 751 F.Supp. at 486. Finally, the court concluded that the proffered evidence, which was testimonial and documentary, would not prejudice defendants' case. *Gallagher*, 751 F.Supp. at 486.

As did the *Gallagher* court, this court finds that after considering the *Blankenship* factors, the government's failure to present evidence concerning the reason for the sealing delay at the time of the suppression hearing does not bar it from presenting such evidence at this time. The law in the Third Circuit was clear prior to *Ojeda Rios*—in order to defeat a motion to suppress electronic surveillance tapes, the government only needed to demonstrate that the integrity of the tapes had been maintained. While that rule has been changed by *Ojeda Rios*, it was the rule under which this court and the government operated in 1987 when defendants' motion was denied. To prohibit the government from offering an explanation concerning the sealing delay as it did not present its explanation at the time of the suppression motion would be grossly unfair as *Falcone* did not require the presentation of such evidence to defeat the motion to suppress.

This conclusion, however, does not decide the issue as defendants make a second argument. They assert that the government should be barred from offering an explanation for the sealing delay due to the allegedly contradictory positions the government has taken concerning that delay at various stages of this litigation. Vastola and Saka contend that the government conceded that a delay occurred at the time of suppression motion and during the first appellate argument before the Third Circuit, but that upon remand to the Third Circuit the government for the first time presented its argument that the June 26, 1985 order authorizing electronic surveillance at the Neptune City Video Warehouse was an extension of the earlier orders authorizing electronic surveillance at the West Long Branch Video Warehouse. The Third Circuit upon remand rejected the government's argument that the June 26, 1985 order was an extension of the earlier orders. *Vastola* III, 915 F.2d at 875. The government also contended upon remand that it had already offered a satisfactory explanation for the sealing delay but the Third Circuit found that it could not accept that argument at that time "on the record

before [it] ..." *Vastola III*, 915 F.2d at 875. Defendants claim that the government should not now be free to offer "a new or improved explanation" after the Third Circuit rejected its extension argument and its argument that a satisfactory explanation had already been given. *See* Defendants' Memorandum of Law on Remand at 22. Vastola and Saka posit that traditional notions of waiver coupled with Justice O'Connor's cautionary note in her concurrence in *Ojeda Rios* that the "satisfactory explanation" must be "the actual reason for the delay ... not a *post hoc* explanation given for the first time on appeal" mandate that the government be barred from introducing evidence as to the actual reason for the sealing delay.

The court does not read Justice O'Connor's concurrence in *Ojeda Rios* so narrowly as to prohibit the government from introducing evidence concerning the actual reason for the sealing delay at this time. It must be recalled that the Second Circuit, prior to the Supreme Court's decision in *Ojeda Rios*, required the government to present a "satisfactory explanation" for the sealing delay. Hence, at the time of the original suppression motion in *Ojeda Rios*, an explanation had to be offered to the district court. Justice O'Connor's cautionary note merely directed the Court of Appeals to evaluate carefully any explanation offered in that forum to ensure that it comported with the explanation offered below. In this case, this court neither sought nor did it hear any evidence concerning the sealing delay at the time of the suppression motion as *Falcone* did not require the presentation of such evidence.

After considering the government's original brief in opposition to the motion to suppress, the proceedings on direct appeal including the partial transcript of oral argument provided to the court by defendants, and the government's brief upon remand to the Third Circuit, this court does not find that the government waived its right to present evidence concerning the reason for the delay. This forum is the only one in which the government has been which is competent to hear evidence of the actual reason for the sealing delay. As discussed *supra*, no explanation for the delay was required by *Falcone* at the time this court resolved the motion to suppress the tapes. Upon remand to the Court of Appeals, the Third Circuit could not hear for the first time what the government's reason for the sealing delay was; that court's review is constrained to the record before it. This is the first time that the government has been afforded the opportunity to present evidence on this issue as this court did not expect such evidence at the time of the sealing delay given the rule in *Falcone*. The government recognized the need to develop the record more fully when it asked the Third Circuit to remand this matter to this court. As a result, the court finds that the government has not waived its right to present evidence as to the actual reason for the delay, and will consider the government's explanation at this time.

## B. TESTIMONY PRESENTED BY THE GOVERNMENT AS TO THE ACTUAL REASON FOR THE SEALING DELAY

The court conducted a hearing on the actual reason for the sealing delay on December 14, 1990. At that hearing, the government offered the testimony of two witnesses, Thomas Roth and Diana Armenakis, the two Assistant United States Attorneys most integrally involved in the electronic surveillance of the West Long Branch and the Neptune City Video Warehouse.

Thomas Roth left the United States Attorney's Office in New Jersey in September of 1987 to engage in the private practice of law. At the time of his departure from the Office, he was the First Assistant United States Attorney in New Jersey. December 14, 1990 Transcript ("Transcript") at 7. Prior to that, Roth was the Chief of the Criminal Division of the United States Attorney's Office. At the time of the events relevant to this matter, January 1985—August 1985, he was the Deputy Chief of the Criminal Division and the Chief of Narcotics in the United States Attorney's Office. Transcript at 8. Within the Criminal Divi-

sion of the United States Attorney's Office in New Jersey, Roth had the most experience with interceptions pursuant to the Wiretap Act, although everyone in the Strike Force would have had equivalent or greater experience than Roth. Transcript at 9.

Roth was involved in the investigation involving electronic surveillance at the Video Warehouse in a supervisory capacity. Transcript at 8. He testified that the Assistant United States Attorney primarily responsible for the electronic surveillance was Diana Armenakis. Transcript at 8.

Roth's understanding of the sealing requirement of 18 U.S.C. § 2518 was "that sealing was required at the termination of interceptions. I had always understood that to mean the termination of all interceptions relating to a specific investigation." Transcript at 10, 17. While he believed that the law did not require sealing before the termination of all interceptions relating to the same investigation, he thought the more prudent course would be to seal the tapes when each facility was terminated. Transcript at 12. His understanding of the sealing requirement under the Wiretap Act was based principally on his reading of the statute and the law. Transcript at 14–15.

Prior to his tenure at the United States Attorney's Office in New Jersey, Roth worked as an Assistant United States Attorney in the Eastern District of New York from 1979–1982. Transcript at 13. He was involved in three electronic surveillance investigations during that time. Transcript at 14. He did not recall any particular cases that he read concerning sealing. Transcript at 21–23, 33.

When Roth was at the United States Attorney's Office in the Eastern District of New York, it was not his practice to wait until the termination of all the interceptions in a case he was supervising to seal the intercepted communications. Transcript at 30. He explained that when he was a new Assistant in the Eastern District, he would seal monthly even if he had an extension order. Transcript at 30. Later, when he became more comfortable with the procedure, he would seal whenever a particular facility was terminated. Transcript at 30. He did so in the Eastern District of New York because he "was a relatively new assistant and [he] was going to take the ultra caution [sic] approach no matter what the case law said." Transcript at 31.

The government's other witness was Diana Armenakis who was in charge of the electronic surveillance at Video Warehouse. She was an Assistant United States Attorney in New Jersey from 1980–1985. At the United States Attorney's Office, she worked primarily on hijacking and bank robbery cases. Transcript at 38. Armenakis worked on only one electronic surveillance case, that involving the electronic interceptions at Video Warehouse. Transcript at 39. During this case, Roth acted as Armenakis's supervisor. Transcript at 49. When she had issues to discuss or problems, Armenakis would go to Roth to discuss them. Transcript at 52.

The electronic surveillance at Video Warehouse commenced in March of 1985, and was extended in both April and May. Transcript at 40. Armenakis prepared the first application, affidavit and order for the electronic surveillance at the West Long Branch Video Warehouse which was signed by Judge Debevoise on March 15, 1985. Transcript at 53–54. She prepared seven day reports for Judge Debevoise during the period of the order, advising him of the results of the wiretapping. Transcript at 55.

On April 16, 1985, Judge Ackerman signed an order authorizing the continued electronic surveillance at the West Long Branch Video Warehouse. Transcript at 56. Armenakis again prepared the application, affidavit and order for the electronic surveillance. See Transcript at 58. On the face of the April 16, 1985 order, she captioned the document, "Order" and below that, she wrote "Extension." Transcript at 57–58. The language in the March 15, 1985 application said "to intercept" while the language in the April 16, 1985 application said "to continue to intercept." Transcript at 59.

Armenakis prepared a third application, affidavit and order, which was signed by Judge Ackerman on May 14, 1985. Transcript at 59. On the face of the May 14, 1985 order, Armenakis wrote, "Second Extension." Transcript at 62. At some point, Armenakis learned that Video Warehouse was to change locations, and it did in fact change locations. Transcript at 40–41. Interception at the West Long Branch Video Warehouse actually ceased on May 31, 1985 although the order authorizing interception did not expire until June 13, 1985. Transcript at 40, 63. It was Armenakis' intention to continue to intercept at Video Warehouse's new location in Neptune City. As a result, she applied to the Justice Department in Washington, D.C. to approve an authorization to continue interception at the new Video Warehouse location at the end of May. Transcript at 41. After a period of time longer than she anticipated, Washington authorized the interception on June 26, 1985. Transcript at 41–42.

Armenakis prepared an application, affidavit and order to obtain authorization to engage in electronic surveillance at the new Video Warehouse location in Neptune City which was signed by Judge Lacey on June 26, 1985. Transcript at 66–67. The face of the June 26th order did not contain the words extension, second extension or third extension. Transcript at 67–68. The June 26, 1985 order contained a new target, Ideal Distributors, and a new premises for Video Warehouse. Transcript at 68. While Armenakis felt the June 26, 1985 order was an extension of the previous order for Video Warehouse, she did not so caption the June 26, 1985 order as the order also served as an original electronic surveillance order for Ideal Distributors. Transcript at 84–85. She thought labeling the order as an extension would be too confusing due to the addition of Ideal Distributors. Transcript at 84–85.

Armenakis prepared another application, affidavit and order to continue interception at the Neptune City Video Warehouse which was signed by Judge Fisher on July 26, 1985. Transcript at 73–74. She remained in charge of the case until early August, 1985, when she was removed for obtaining an order for wiretapping which had not been cleared through the Department of Justice. Transcript at 50. The incident involved the July 26, 1985 extension order authorizing continued interception at the Neptune City Video Warehouse. Armenakis prepared the application for that order and signed it under oath. In the paperwork, Armenakis indicated that she had received Department of Justice authorization for the electronic surveillance which she had not obtained. Transcript at 51, 74.

Armenakis' understanding of the sealing requirement under the Wiretap Act "was that when the investigation was completed that you immediately sealed whatever tapes had been obtained." Transcript at 42–43; *see* Transcript at 75, 76–78. She obtained this understanding by studying "the statute and several of the annotations. I spoke with other more experienced attorneys in the office on wiretaps and it was . . . my understanding which appeared to be consistent throughout the office." Transcript at 43, 77–79. When she "began the investigation, [she] outlined the statute and [she] read relevant annotations." Transcript at 81–82. While at the United States Attorney's Office, Armenakis was given a manual to review and maintain, *Proving Federal Crimes* which contained some information on electronic surveillance; however, she was given no specific training in that area. Transcript at 47, 48–49. She did not recall reviewing any particular guidelines, instructions, manuals, treatise, or cases with regard to her sealing obligation with the West Long Branch Video Warehouse premises although she "was reviewing documents all the time." Transcript at 74–75, 48–49.

Even though it was not the completion of the investigation, and she understood that sealing was not required until the completion of the investigation, Armenakis prepared the necessary paperwork to have the West Long Branch Video Warehouse tapes sealed on July 15, 1985. Transcript at 43–44, 45. She sealed the tapes as a housekeeping matter after the F.B.I. Custodian of the tapes mentioned to the agent on the

case, John Mahoney, that the F.B.I. numbers on the tapes had changed due to the new Video Warehouse location. Transcript at 43–44. She discussed this with other Assistants who suggested it would be appropriate under the circumstances to seal the tapes. Transcript at 87. Armenakis then made the decision to seal the tapes at that time since they were not going to be using those particular F.B.I. numbers any more. Transcript at 44. The tapes were sealed as a matter of convenience. Transcript at 45. No one suggested to her that she needed to get the tapes sealed. Transcript at 87.

### C. THE COURT'S FINDING AS TO THE ACTUAL REASON FOR THE SEALING DELAY

■ Roth and Armenakis testified that the West Long Branch Video Warehouse tapes were not sealed earlier than July 15, 1985 as they believed that they were not obligated to seal tapes under the Wiretap Act until the conclusion of the entire Video Warehouse investigation. While July 15, 1985 was not the end of the entire investigation, Armenakis testified the tapes were sealed at that time as a housekeeping matter.

Defendants point to § 9–7.340 of the United States Attorneys' Manual which states, *"[i]mmediately* upon termination of the interception, the original recordings of the conversations should be submitted by the supervisory attorney to the judge authorizing the interception...." (emphasis in original) in support of their contention that Roth and Armenakis' testimony cannot be credible given the language of the manual. The court notes that the term "interception" is capable of interpretation as a singular or as a plural. If interpreted as a plural, Roth and Armenakis' interpretation that the tapes did not have to be sealed until the termination of the Video Warehouse interception (including the Neptune City interception of Video Warehouse) is not borne out by the manual. The court finds that the language contained within the manual does not call into question the credibility of Roth and Armenakis.

Defendants also direct the court's attention to the fact that Armenakis did not label the June 26, 1985 order "Third Extension" in support of their argument she did not believe that the June 26, 1985 order was an extension of the previous orders authorizing interception at the West Long Branch Video Warehouse. The court finds that Armenakis' explanation of why she did not label the June 26, 1985 order authorizing the continued electronic surveillance of Video Warehouse at the Neptune City location "Third Extension"—that Ideal Distributors was added to that order and to so label the order would be confusing—is credible, and rejects defendants' argument.

After considering the testimony of the witnesses, and the voluminous exhibits submitted by defendants, the court finds that the actual reason for the sealing delay was that the Assistant United States Attorney in charge of the electronic surveillance, Diana Armenakis, and her supervisor on the case, Thomas Roth, believed that the Wiretap Act did not require sealing until the end of the entire investigation. The tapes were sealed prior to the end of the entire investigation as a matter of convenience. This conclusion is supported by the direct testimony of the witnesses which the court finds to be credible.

Now that the court has determined the actual reason for the sealing delay, it must consider whether the government has established whether the actual reason was objectively reasonable at the time of the delay in 1985.

### D. WAS THE ACTUAL REASON FOR THE SEALING DELAY OBJECTIVELY REASONABLE?

Roth and Armenakis' understanding of the sealing requirements under the Wiretap Act has been borne out by the Third Circuit's opinion in *Vastola* III. Nevertheless, the court must determine whether their interpretation of the statute was objectively reasonable in 1985. If so, the court did not err in admitting the West Long Branch Video Warehouse tapes at trial.

Defendants direct the court to treatises on electronic surveillance by Clifford S. Fishman, *Wiretapping and Eavesdropping*, and James Carr, *The Law of Electronic Surveillance*, in support of their contention that Roth and Armenakis's view was not objectively reasonable. At the hearing, Roth testified that he ordered the Fishman and Carr treatises for the New Jersey United States Attorney's Office *in 1986 or 1987*, Transcript at 29, and Armenakis testified that she did not recall referring to any particular treatises during this case. Transcript at 20. The court finds that those treatises were not in the New Jersey United States Attorney's Office in 1985. The court cannot hold that the attorneys' failure to consult those treatises was unreasonable as both testified that they had read the statute and the applicable case law.

Defendants point to *United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir.1979), *United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir.1977), and *United States v. Fury*, 554 F.2d 522, 533 (2d Cir.1977) to demonstrate that Roth and Armenakis' view of when they were obligated to seal the tapes under the Wiretap Act was unreasonable. While these cases may have made the law appear clear to defendants, the court finds that in 1985 the law was not settled, and that case law existed to support Roth and Armenakis' view. For example, in *United States v. Harvey*, the court wrote, "Case law clearly holds that the tapes do not have to be sealed until the end of the extension orders, i.e., *at the termination of the entire surveillance*." *United States v. Harvey*, 560 F.Supp. 1040, 1057 (S.D.Fla.1982), citing *United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir.1977) and *United States v. Vazquez*, 605 F.2d 1269, 1275–76 (2d Cir. 1979) (emphasis added). In addition, in both *Ojeda Rios* and *Gallagher*, the government presented reasons similar to the reason presented by Roth and Armenakis in this case for the sealing delay. As the *Gallagher* court so aptly put:

> The Supreme Court noted two Second Circuit cases which, while not establishing that the supervising attorney's view was correct, did 'support the conclusion

that the "extension" theory now pressed upon us was objectively reasonable at the time of the delays.' [*Ojeda Rios*, 110 S.Ct.] at 1851. The cases to which the Supreme Court referred were *United States v. Principie*, 531 F.2d 1132 (2d Cir.1976), *cert. denied*, 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 581 (1977) and *United States v. Scafidi*, 564 F.2d 633 (2d Cir.1977), *cert. denied*, 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 400 (1978).

> The Second Circuit and Third Circuit are in close geographical proximity and in view of the fact that each of these Circuits includes a part of the greater New York City Area their law enforcement efforts often overlap and require continuing cooperation.... Second Circuit opinions in the field of criminal law, as well as in a number of other fields, have a significant influence where there is no Third Circuit authority. Thus the existence of the *Principie* and *Scafidi* opinions have a similar effect in this case as they had in [*Ojeda*] *Rios*.

> In [*Ojeda*] *Rios* the Supreme Court held that in light of those cases the supervising attorney's view of the sealing requirement was objectively reasonable ... By the same token I conclude that Robins' view, though wrong, was objectively reasonable ...

*Gallagher*, 751 F.Supp. at 495.

The sealing delay in *Gallagher* took place in 1982, and the sealing delay in *Ojeda Rios* took place in 1984. This court has been unable to discern any significant development in the law of electronic surveillance sealing which occurred between 1984, the date of the sealing delay in *Ojeda Rios*, and the time of the sealing delay in this case in 1985 which would have made Roth and Armenakis' view that sealing was required only at the end of the investigation objectively *unreasonable*. There certainly was no law in the Third Circuit to the contrary that this court has uncovered or that defendants presented in support of their argument that the attorneys' view was objectively unreasonable. As did the court in *Ojeda Rios*, 110 S.Ct. at 1851, and the court in *Gallagher*, 751 F.Supp. at 495,

this court finds that Roth and Armenakis' interpretation of the statute was objectively reasonable at the time of the sealing delay. So finding, the court must also find that the government has offered a "satisfactory explanation" for the sealing delay as required by the Wiretap Act. Hence, the court properly admitted the electronic surveillance at trial.

## IV. CONCLUSION

For the above stated reasons, the court will reinstate the convictions of defendant Gaetano Vastola as to Count 1, Count 3, Count 4 and Count 9 of the redacted superceding indictment, and reinstate the convictions of Elias Saka as to Count 1, Count 2, Count 3, Count 4, Count 6, Count 7, Count 9, Count 12, Count 13, Count 14, Count 15, Count 16, Count 17, Count 18, Count 19, Count 20, Count 21, Count 22, Count 23, Count 24, Count 25, and Count 26 of the redacted superceding indictment.