**UNITED STATES of America,**

v.

**Gaetano VASTOLA, et al., Defendants.**

**Crim. A. No. 86–301(SSB).**

United States District Court,
D. New Jersey.

Aug. 17, 1993.

Michael Chertoff, U.S. Atty. by Bruce Repetto, Marion Percell, Asst. U.S. Attys., Newark, NJ, for U.S.

Michael Rosen, Joy Vastola, New York City, and Diarmuid White, Herald Price Fahringer, for defendant Gaetano Vastola.

## OPINION

BROTMAN, District Judge.

Presently before the court is a narrow issue on remand from the Third Circuit Court of Appeals concerning the suppression of certain electronic surveillance tapes under the Wiretap Act, 18 U.S.C. § 2518(8)(a). In particular, the court must determine whether a government attorney who made an unreasonable mistake of law as to when these tapes were required to be sealed nevertheless acted in a reasonably prudent manner in investigating this legal issue. *United States v. Vastola*, 989 F.2d 1318, 1327 (3d Cir.1993) (*Vastola III* ). Upon careful consideration of the relevant record and of the parties' submissions, and for the reasons stated herein, the court finds that the government attorney's behavior was reasonable under the circumstances and that, therefore, it was proper to refuse to suppress the tapes.

## I. Background and Procedure

The extensive background to this criminal case in general and on the issue of whether to suppress certain electronic surveillance tapes has been the subject of several reported decisions. *See, e.g., Vastola III*, 989 F.2d 1318 (3d Cir.1993); *United States v. Vastola*, 915 F.2d 865 (3d Cir.1990) (*Vastola II*), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1178 (1991); *United States v. Vastola*, 899 F.2d 211 (3d Cir.) (*Vastola I* ), *vacated and remanded*, 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990). The court therefore discusses only the facts and procedure relevant to the issue to be addressed on remand.

On May 3, 1989, this court entered an order of judgment and commitment against Defendant Vastola after a jury found him guilty of two substantive RICO offenses under 18 U.S.C. § 1962(c), a RICO conspiracy offense under 18 U.S.C. § 1962(d), and a conspiracy to use extortionate means to collect an extension of credit, in violation of 18 U.S.C. § 894. Vastola had been charged, along with 20 other co-defendants, in a 114 count indictment. Prior to trial, Vastola and the other defendants filed an omnibus motion that included a request for the suppression of the electronic tapes obtained from the government's surveillance of the Video Warehouse in West Long Branch, New Jersey, between March 15, 1985 and May 31, 1985. The tapes were not sealed until July 15, 1985, more than 45 days after the final interception on May 31, 1985 and 32 days after the June 13, 1985 expiration date of the order authorizing the surveillance. Defendants contended that the West Long Branch tapes should be suppressed pursuant to the Wiretap Act, 18 U.S.C. § 2518(8)(a).[1]

---

1. Section 2518(8)(a) provides, in pertinent part:

 The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions.... The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

 18 U.S.C. § 2518(8)(a).

In considering the Wiretap Act suppression issue, the district court, in effect, determined that the sealing was untimely. However, the court refused to suppress the tapes, relying on the case of *United States v. Falcone*, 505 F.2d 478 (3d Cir.1974), *cert. denied*, 420 U.S. 955, 95 S.Ct. 1338, 43 L.Ed.2d 432 (1975), for the rule that suppression is warranted only where it can be shown that the physical integrity of the tapes had been compromised. Because the government had established by clear and convincing evidence the physical integrity of the West Long Beach tapes, the court denied Vastola's and the other defendants' motion to suppress. *See United States v. Vastola*, 670 F.Supp. 1244, 1282 (D.N.J.1987), *aff'd in part, rev'd in part*, 899 F.2d 211 (3d Cir.), *vacated and remanded*, 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990).

On appeal, the Third Circuit essentially affirmed Vastola's judgment of conviction on March 20, 1990. *Vastola I*, 899 F.2d 211 (3d Cir.1990).[2] In a footnote, the court of appeals noted that the district court's refusal to suppress the West Long Beach tapes was "fully consistent" with *Falcone*. *Id.* at 238 n. 33. Thereafter, Vastola filed in the United States Supreme Court a petition for a writ of certiorari. On June 25, 1990, the Supreme Court vacated the judgment of the Third Circuit and remanded the matter for further consideration in light of the recently decided case of *United States v. Ojeda Rios*, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990). *See Vastola v. United States*, 497 U.S. 1001, 110 S.Ct. 3233 (1990). In *Ojeda Rios*, the Court held that a delay in sealing authorized electronic surveillance tapes requires a suppression of the tapes unless the government offers a "satisfactory explanation" for the sealing delay. Expressly rejecting the Third Circuit's rule in *Falcone*, the Court read section 2518(8)(a) to require that the actual reason for the sealing delay be objectively reasonable at the time of the delay. 495 U.S. at 265–67 & 265 n. 5, 110 S.Ct. at 1850–51 & 1850 n. 5.

On remand from the Supreme Court, the Third Circuit in *Vastola II* determined that a sealing delay did in fact occur with respect to the West Long Branch tapes. 915 F.2d 865, 875 (3d Cir.1990). The Third Circuit then vacated Vastola's conviction and remanded the matter to the district court to ascertain the actual reason for the sealing delay and whether this reason was objectively reasonable so as to constitute a satisfactory explanation under *Ojeda Rios* and section 2518(8)(a) of the Wiretap Act. *Id.* at 876–77.

On the first remand, the district court determined that "the actual reason for the sealing delay was that the Assistant United States Attorney in charge of the electronic surveillance, Diana Armenakis, and her supervisor on the case, Thomas Roth, believed that the Wiretap Act did not require sealing until the end of the entire investigation." *United States v. Vastola*, 772 F.Supp. 1472, 1481 (D.N.J.1991), *vacated and remanded*, 989 F.2d 1318 (3d Cir.1993). The court then found that Roth's and Armenakis' interpretation of the statute, although wrong in light of subsequent rulings, "was objectively reasonable at the time of the sealing delay." *Id.* at 1483. Based on these findings, the district court held that the government had offered a "satisfactory explanation" as required by section 2518(8)(a) of the Wiretap Act, and that therefore the tapes had been properly admitted at trial. *Id.* Accordingly, the court reinstated Vastola's conviction.

Defendant once again appealed. In *Vastola III*, the Third Circuit affirmed this court's finding as to the actual reason for the sealing delay. *See* 989 F.2d 1318, 1325 (3d Cir.1993). However, the court of appeals, relying on its earlier decision in *United States v. Carson*, 969 F.2d 1480 (3d Cir.1992), reversed as to the finding that this explanation was objectively reasonable. *See* 989 F.2d at 1327. But the Third Circuit refused to rule in Vastola's favor because "an unreasonable mistake of law does not automatically lead to suppression." *Id.* Rather:

the other substantive RICO count must be reversed on the ground of insufficiency of the evidence. 899 F.2d at 215.

---

**2.** The Third Circuit reversed the district court's ruling granting Vastola's motion for entry of a judgment of acquittal on one of the substantive RICO counts, and found that the conviction on

When a government attorney's legal conclusion is found to be unreasonable, the explanation for the delay would still be an objectively reasonable "mistake of law" if the government can show that its attorney has adequately researched the law or has otherwise acted reasonably.

*Id.* For a second time, the Third Circuit vacated Vastola's conviction and remanded the case back to this court to determine if " 'the attorney involved acted as a "reasonably prudent" attorney would to investigate the legal question involved in a reasonably prudent manner.' " *Id.* (quoting *Carson*, 969 F.2d at 1494). If so, then the government's explanation is a satisfactory one, and Vastola's convictions must again be reinstated because the tapes were properly admitted at trial in accordance with the Wiretap Act.

## II. Discussion

 The narrow question before the court is whether "Armenakis conducted herself reasonably under the circumstances." *Vastola III*, 989 F.2d 1318, 1327 (3d Cir. 1993). The burden of proof falls upon the government. *Id.* The standard for making this determination is one of objective reasonableness. An attorney's actions will be considered objectively reasonable where, given the existing circumstances, she undertakes " 'a normally competent level of legal research' " to support the conclusion she reaches. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir.1988) (quoting *Lieb v. Topsite Indus., Inc.*, 788 F.2d 151, 157 (3d Cir.1986)). The court borrows this formulation from the Third Circuit's Rule 11 jurisprudence. This is proper because the goal of Rule 11 is to ensure accountability by requiring counsel to conform to "conduct that would be expected of a competent attorney" before signing a pleading, motion, or other paper to be submitted to the court. *See* 2A *Moore's Federal Practice* ¶ 11.02[3.–1], at 11–36. Thus, as the Ninth Circuit has stated:

It is obvious from the text of the Rule that the pleader need not be correct in his view of the law.... The pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after 'reasonable inquiry.' Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case.

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–31 (9th Cir.1986). This is precisely the kind of inquiry that may be used to evaluate whether a government attorney's acted with reasonable prudence in researching the sealing issued, as required by the Third Circuit.

 Defendant suggests that a government attorney, who "is in a peculiar and very definite sense the servant of the law," should be judged by a higher standard than used to evaluate a private attorney. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). In particular, defendant relies on dictum from *Freeport–McMoRan Oil & Gas Co. v. Federal·Energy Regulatory Comm'n*, 962 F.2d 45 (D.C.Cir. 1992), in which the court condemned "the remarkable assertion at oral argument that government attorneys ought not to be held to higher standards than attorneys for private litigants." *Id.* at 46.[3] While not unsympathetic with defendant's position, this court is nevertheless mindful that the present matter comes before it on the posture of a very specific and narrow remand in which the court of appeals has clearly defined the standard of review as that of a "reasonably prudent attorney" acting in a "reasonably prudent manner." 989 F.2d at 1329. Accordingly, this is the standard the court applies today.

---

**3.** As the D.C. Circuit observed:

"The notion that government lawyers have obligations beyond those of private lawyers did not originate in oral argument in this case. A government lawyer 'is the representative not of an ordinary party to a controversy,' the Su-

preme Court said long ago in a statement chiseled on the walls of the Justice Department, 'but of a sovereignty whose obligation ... is not that it shall win a case, but that justice shall be done.' " 962 F.2d at 47 (quoting *Berger*, 295 U.S. at 88, 55 S.Ct. at 633).

In its opinion on first remand, the district court made the following findings as to the legal research undertaken by Diana Armenakis, the Assistant United States Attorney in charge of the electronic surveillance at the West Long Branch Video Warehouse:

> Armenakis' understanding of the sealing requirement under the Wiretap Act "was that when the investigation was completed that you immediately sealed whatever tapes had been obtained." Transcript at 42–43; *see* Transcript at 75, 76–78. She obtained this understanding by studying "the statute and several of the annotations. I spoke with other more experienced attorneys in the office on wiretaps and it was ... my understanding which appeared to be consistent throughout the office." Transcript at 43, 77–79. When she "began the investigation, [she] outlined that statute and [she] read relevant annotations." Transcript at 81–82. While at the United State's Attorney's Office, Armenakis was given a manual to review and maintain, *Proving Federal Crimes* which contained some information on electronic surveillance; however, she was given no specific training in that area. Transcript at 47, 48–49. She did not recall reviewing any particular guidelines, instructions, manuals, treatise, or cases with regard to her sealing obligation with the West Long Branch Video Warehouse premises although she "was reviewing documents all the time." Transcript at 74–75, 48–49.

*Id.* at 1480.[4] The court also found that Assistant United States Attorney Thomas Roth was involved in the electronic surveillance at the Video Warehouse in a supervisory capacity. *Id.* at 1479 (citing Transcript at 8). Roth's understanding of the sealing requirement was based principally on his reading of the statute, the caselaw and his experience from prior surveillance cases. *Id.* at 1479 (citing Transcript at 14–15). Like Armenakis, Roth understood the law to require sealing upon "the termination of all interceptions relating to a specific investigation." *Id.* (quoting Transcript at 10, 17).[5]

■ Applying the above-articulated standard to these facts, the court concludes that Armenakis acted reasonably under the circumstances. The critical aspect in this case is the interaction between Armenakis' own research and the authoritative confirming advice she received from other, more experienced United States Attorneys in her office. Armenakis' research, which consisted of reading and outlining the statute and reviewing the relevant annotations, was enough to give an average attorney a basic understanding of the law. However, standing alone, this limited investigation cannot be considered a normally competent level of research that a reasonably prudent attorney would undertake. The meaning of a complex statute, such as the Wiretap Act, is not always readily ascertainable from just reading the text; and annotations often fail to fully reflect how caselaw has interpreted a statutory provision. Thus, a reasonably prudent

---

**4.** Defendant appears to challenge this court's finding that Armenakis read the statute and read the relevant annotations. *See* Def.'s Br. at 28–29. During her testimony, Armenakis clearly stated at least three times that she undertook this research. *See* Transcript at 43, 79, 81–82. However, defendant suggests that this testimony is contradicted by her later statement that she did not recall researching the sealing issue.

Defendant mischaracterizes this testimony. On cross-examination by defense counsel, the following colloquy occurred:

Q. Miss Armenakis, could you identify one case, one manual, one treatise, one guideline, one directive to support your understanding of what the sealing requirement was in 1985?

A. I haven't research that issue in preparation for today. The answer is, no, at this point I cannot.

Q. Did you research it in 1985?

A. I don't recall.

Transcript at 83. A careful reading of this exchange establishes that the second question and answer must be read in light of the first. Thus, when Armenakis states that she cannot recall, it is in reference to whether she researched the sealing issue by looking at cases, manuals, treatises, guidelines, or directives. Notably absent from the list in the first question are the words "statute" and "annotations." Thus, Armenakis's answer is not inconsistent with this court's finding that she read the relevant annotations on the sealing issue.

**5.** Because the December 14, 1990 hearing, at which Roth and Armenakis testified, provides a sufficient factual basis for the question now on remand, the court finds there is no need for the taking of addition evidence.

attorney in Armenakis' position must augment her investigation in order for her behavior to constitute objectively reasonable conduct.

One way Armenakis could have supplemented her research would have been by reading the relevant cases on the sealing requirement. This she did not do. However, Armenakis did not rely solely on her research of reading the statute and the relevant annotations. She also took the further step of having her understanding of the sealing requirement confirmed by the advice of more experienced lawyers in the United States Attorneys Office.

■ In *United States v. Carson*, 969 F.2d 1480 (3d Cir.1992), the Third Circuit suggested that under appropriate circumstances, an attorney may be acting in a reasonably prudent manner by relying upon another lawyer's statements as to a rule of law without undertaking an independent examination of the law. *Id.* at 1494–95. According to the Third Circuit, "[i]t is not always unreasonable for an attorney to rely on a reasoned oral opinion of a supervisor, or even that of a peer with more experience in the area of law in question." *Id.* at 1495. This suggestion recognizes that, as a practical matter, some attorneys within a law office are more knowledgeable about particular legal subjects and that other attorneys may reasonably rely upon the advice given them as authoritative. Thus, under the appropriate circumstances, an attorney who has undertaken a rudimentary level of research and who has had her understanding of the law confirmed by more knowledgeable and experienced colleagues, need not necessarily undertake further research in order to have performed a normally competent level of legal research. *Cf. Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 558 (9th Cir.1986) (in Rule 11 context, "reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's

duty of reasonable inquiry"), *cert. denied*, 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987).

In the present case, Armenakis was entitled to place a substantial amount of weight on the opinion of her more experienced colleagues in the United States Attorney's Office. Although Armenakis does not recall which United States Attorney she spoke to about the sealing requirement, *see* Transcript at 45, it is fair to infer that Roth's view of the law represented the general understanding of the office.[6] Roth's view, which was based on his reading of the statute and cases and on his experience, was clearly the result of an adequate level of research. These facts and circumstances made it reasonable for Armenakis to place substantial reliance upon the view of her colleagues as the requirements of the Wiretap Act. Armenakis' failure to undertake further research into the sealing requirement above and beyond reading the statute and the relevant annotations did not fall below the standard for reasonably prudent behavior, given the fact that she had her understanding of the law confirmed by the view of the other, more experienced attorneys in her office.

Thus, Armenakis' reliance on authoritative advice given by her colleagues constituted an adequate substitute for further reading of the caselaw, and her behavior was objectively reasonable under the circumstances. Because the government has therefore offered a "satisfactory explanation" for the failure to timely seal the West Long Branch tapes, the court holds that these tapes were properly admitted at trial. As a result of this holding, the court does not reach the issue of harmless error.

## III. Conclusion

For the reasons stated above, the court finds that the actions of the government attorney were objectively reasonable in light of the circumstances. The actual reason for the delay in sealing the West Long Branch tapes

6. The court derives this inference from the following facts: Roth was involved in the investigation involving electronic surveillance at the Video Warehouse in a supervisory capacity, *see* 772 F.Supp. at 1479 (citing Transcript at 8); and Roth had the most experience of any attorney in the United States Attorney's office in New Jersey

with respect to interceptions pursuant to the Wiretap Act, *see id.* (citing Transcript at 9). It is fair to conclude from these facts that Roth's understanding of the sealing requirement was representative of the understanding obtained by Armenakis from her colleagues.

was therefore a "satisfactory" one within the meaning of section 2518(8)(a) of the Wiretap Act. Accordingly, the court holds that the West Long Branch tapes were properly introduced at trial and suppression is not required.

An appropriate order reinstating the convictions of Defendant Vastola will be entered.

## ORDER

This matter having come before the court upon remand from the Third Circuit;

The court having considered the submissions of the parties and the relevant record in this case; and

For the reasons stated in the court's opinion of this date;

IT IS on this 17th day of August 1993 hereby

ORDERED that the convictions of defendant Gaetano Vastola as to Count 1, Count 3, Count 4, and Count 9 of the redacted superseding indictment are REINSTATED.

No costs.