

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-1994

# United States of America v. Vastola

Precedential or Non-Precedential:

Docket 93-5529

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States of America v. Vastola" (1994). *1994 Decisions.* Paper 27.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/27

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


NO. 93-5529


UNITED STATES OF AMERICA

<u>Appellee</u>

v.

GAETANO VASTOLA

<u>Appellant</u>


On appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 86-301)


Argued March 4, 1994

Before, STAPLETON and SCIRICA, <u>Circuit</u> <u>Judges</u>, and
VAN ANTWERPEN, <u>District</u> <u>Judge</u>*

(Opinion filed May 25, 1994)

Herald Price Fahringer (argued)
Diarmuid White
Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria
110 East 59th Street
New York, New York 10022

        Attorneys for Appellant

Marion Percell (argued)
Michael Chertoff
United States Attorney
970 Broad Street
Newark, New Jersey 07102

        Attorneys for Appellee

1

\*  Hon. Franklin S. Van Antwerpen, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

VAN ANTWERPEN, District Judge.

Appellant Gaetano Vastola ("Vastola") comes before us for the fourth time seeking to overturn his May 3, 1989 convictions for two substantive RICO offenses under 18 U.S.C. § 1962(c), a RICO conspiracy offense under 18 U.S.C. § 1962(d), and conspiracy to use extortionate means to collect an extension of credit, in violation of 18 U.S.C. § 894. Vastola seeks suppression of certain wiretap recordings, improperly sealed under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Wiretap Act), as amended, 18 U.S.C. § 2510 et seq. Vastola challenges the findings of the district court from the most recent remand in this case. U.S. v. Vastola, 830 F.Supp. 250 (D.N.J. 1993). Specifically, Vastola disputes the finding that the United States Attorney supervising the wiretap surveillance conducted adequate legal research or otherwise acted as a reasonably prudent attorney when she failed to seal the wiretap tapes in a timely fashion.

The history of this complex case has been well-documented in the many published opinions written in connection with this case. United States v. Vastola, 989 F.2d 1318 (3d Cir. 1993) (Vastola III); United States v. Vastola, 915 F.2d 865 (3d Cir. 1990) (Vastola II), cert. denied, 498 U.S. 1120, 111 S.Ct. 1073 (1991); United States v. Vastola, 899 F.2d 211 (3d Cir. 1990) (Vastola I), vacated and remanded, 497 U.S. 1001, 110 S.Ct. 3233 (1990). We will discuss only the facts and procedural

3

history relevant to our review of the most recent remand of this case to the district court.

## I.
## Facts and Procedural History

On May 3, 1989 the district court entered an order of judgment and commitment against Vastola after a jury found him guilty of two substantive RICO offenses. Vastola had been charged, along with 20 other co-defendants in a 114-count indictment filed on September 19, 1986. Vastola was sentenced to serve a total of twenty years' imprisonment and to pay a total fine of $70,000.

Prior to trial, Vastola and the other defendants filed an omnibus motion that included a request for the suppression of the electronic tapes obtained from the government's surveillance of an establishment named the Video Warehouse in West Long Branch, New Jersey ("West Long Branch tapes"), between March 15, 1985 and May 31, 1985. The tapes were not sealed until July 15, 1985, more than 45 days after the final interception on May 31, 1985 and 32 days after the June 13, 1985 expiration date of the order authorizing the surveillance. Defendants contended that the West Long Branch tapes should be suppressed pursuant to the Wiretap Act, 18 U.S.C. § 2518(8)(a).[0]

---

[0]Section 2518(8)(a) provides, in pertinent part:
> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such way as will protect the recording from editing or other

4

The district court determined, in effect, that the sealing was untimely.  However, the district court refused to suppress the tapes, relying on the case of United States v. Falcone, 505 F.2d 478 (3d Cir. 1974), cert. denied, 420 U.S. 955, 95 S.Ct. 1338 (1975) for the rule that suppression is warranted only where it can be shown that the physical integrity of the tapes has been compromised.  Finding by clear and convincing evidence that the physical integrity of the West Long Beach tapes had not been compromised, the district court denied Vastola's and the other defendants' motion to suppress.  United States v. Vastola, 670 F.Supp. 1244, 1282 (D.N.J. 1987), aff'd in part, rev'd in part, 899 F.2d 211 (3d Cir.), vacated and remanded, 497 U.S. 1001, 110 S.Ct. 3233 (1990).

On appeal, we affirmed the district court's refusal to suppress the West Long Branch tapes on the basis of Falcone. Vastola I, 899 F.2d 211 (3d Cir. 1990).  On June 25, 1990, the Supreme Court vacated this decision and remanded the matter for further consideration in light of the recently decided case of United States v. Ojeda Rios, 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990).  In Ojeda Rios, the Supreme Court held that a

alterations.  Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions . . . The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.
18 U.S.C. § 2518(8)(a).

5

delay in sealing authorized electronic surveillance tapes requires suppression of the tapes unless the government offers a "satisfactory explanation" for the sealing delay.  The court held that section 2518(8)(a) requires that the actual reason for the sealing delay be objectively reasonable at the time of the delay.  Ojeda Rios, 495 U.S. at 266-267, 110 S.Ct. at 1850-1851.

On remand from the Supreme Court, this court concluded that "a sealing delay indeed occurred as the West Long Branch tapes should have been sealed either as soon as was practical after May 31, 1985, when the actual surveillance ended, or as soon as practical after June 13, 1985, when the final extension order expired."  Vastola II, 915 F.2d 865, 875 (3d Cir. 1990). We then remanded to the district court to determine "whether the government should now be permitted, under Ojeda Rios, to offer an explanation for its violation of the sealing requirement."  Id. at 876.  Vastola's petition for certiorari from this decision was denied.  Vastola v. United States, 498 U.S. 1120, 111 S.Ct. 1073 (1991).

On December 14, 1990 the district court conducted a hearing at which the government presented evidence concerning the reason for the sealing delay.  The district court determined that "the actual reason for the sealing delay was that the Assistant United States Attorney in charge of the electronic surveillance, Diana Armenakis, and her supervisor on the case, Thomas Roth, believed that the Wiretap Act did not require the sealing until the end of the investigation."  United States v. Vastola, 772 F.Supp. 1472, 1481 (D.N.J. 1991), vacated and remanded, 989 F.2d

6

1318 (3d Cir. 1993). The court found that the government's misunderstanding of the law had been objectively reasonable and the delay had perforce been satisfactorily explained." Id., at 1483. Accordingly, the district court reinstated Vastola's conviction, sentencing him to 17 years imprisonment.

On appeal from the order reinstating his conviction, we held that the district court had not abused its discretion by allowing the government to present evidence supporting its explanation for the sealing delay. Vastola III, 989 F.2d 1318, 1324–25 (3d Cir. 1993). However, relying on our earlier decision in United States v. Carson, 969 F.2d 1480 (3d Cir. 1992), we reversed as to the finding that the government's explanation was objectively reasonable. Nonetheless, we remanded this case for further proceedings because, as we held in Carson, an "unreasonable mistake of law does not automatically lead to suppression." Vastola III, 989 F.2d at 1327. In Vastola III, we discussed the Carson holding as follows:

> The Carson court explained that even though an attorney's mistake of law is unreasonable, the government can still show a satisfactory explanation if "the attorney involved acted as a 'reasonably prudent' attorney would to investigate the legal question involved in a reasonably prudent manner." 969 F.2d at 1494 . . . The case [Carson] then stands for the proposition: When a government attorney's legal conclusion is found to be unreasonable, the explanation for the delay would still be an objectively reasonable "mistake of law" if the government can show that its attorney has adequately researched the law or has otherwise acted reasonably.

Vastola III, 989 F.2d at 1327. Since the district court did not make a determination whether Assistant United States Attorney

7

Armenakis ("Armenakis") acted reasonably under the circumstances, we remanded for further proceedings.

The district court addressed this narrow question of attorney conduct in its published opinion United States v. Vastola, 830 F.Supp. 250 (D.N.J. 1993) ("Second Remand"). The court found that while Armenakis failed to conduct adequate research, her "reliance on the authoritative advice given by her colleagues constituted an adequate substitute for further reading of the caselaw, and her behavior was objectively reasonable under the circumstances." Id., 830 F.Supp. at 256. Finding that the government had offered a "satisfactory explanation" for the failure to timely seal the West Long Branch tapes, the court held that the tapes were properly admitted at trial. Consequently, the court issued an order reinstating the convictions of Vastola.

Vastola now appeals the district court's findings, arguing that Armenakis' conduct was not objectively reasonable under the circumstances and that suppression of the surveillance tapes is warranted. For the reasons that follow, we affirm the findings of the district court.

## II.
## Standard of Review

We review the district court's factual findings for clear error. Vastola II at 1324 (quoting U.S. v. McMillen, 917 F.2d 773, 774 (3d Cir. 1990)). We exercise plenary review over the district court's legal conclusion that the Assistant United

8

States Attorney's conduct was "reasonably prudent" under the circumstances.  Id. at 1324.[0]

### III.
### Analysis

This Court in Vastola III remanded to the district court on one narrow issue:  Did Armenakis, in making an unreasonable mistake of law, nevertheless conduct herself reasonably under the circumstances?  Vastola III, 989 F.2d at 1327.  The answer is "yes," if the government can show that its attorney has adequately researched the law or has otherwise acted prudently.  Id.  The burden of proof is on the government to make this showing.  Vastola III, 989 F.2d at 1327.

The relevant facts for this analysis are few in number:  Armenakis studied the statute, outlined it, read its annotations, and spoke with more experienced attorneys.  Vastola III, 989 F.2d at 1327.[0]

---

[0]The Government urges a highly deferential review of all aspects of the district court's opinion in this case, not just of its findings of fact; it thus argues we should use the standard of review we use for the Rule 11 determinations of a district court. See Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 110 S.Ct. 2447 (1990).  Because this case involves a question of the legal standard of reasonable research of a government attorney in a criminal case, and not just reasonable attorney conduct in a civil context, we find the suggested standard inappropriate.

[0]These findings of fact were established by the district court during the first remand, United States v. Vastola, 772 F.Supp. 1472, 1480 (D.N.J. 1991).  The district court held an evidentiary hearing in 1990, five years after the relevant conduct occurred. The district court's findings were acknowledged by the Third Circuit in Vastola III, and relied upon by the district court during the most recent remand.  We are satisfied that they are not clearly erroneous.

The district court found in Second Remand that these facts provided a sufficient factual basis to decide the question of reasonable conduct.  As a result, no additional evidence was

The district court invoked Federal Rule of Civil Procedure 11 jurisprudence to define the "reasonably prudent attorney." The district court cited Mary Ann Pensiero, Inc., 847 F.2d 90, 94 (3d Cir. 1988) for the following Rule 11 standard:

> An attorney's actions will be considered objectively reasonable where, given the existing circumstances, she undertakes "'a normally competent level of legal research'" to support the conclusion she reaches.

Second Remand, 830 F.Supp. at 254. Under the circumstances, this standard is helpful in beginning an analysis of reasonable attorney conduct. The intended goal of Rule 11 is accountability. It "imposes on counsel a duty to look before leaping and may be seen as a litigation version of a familiar railroad crossing admonition to 'stop, look, and listen.'" Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986). In this case, we are assessing the reasonableness of Armenakis' conduct and her duty to stop, look and listen while conducting a wiretap investigation.[0]

---

taken and the district court made its rulings on these facts alone. We acknowledge that these facts are adequate for the task at hand and that further inquiry by the district court would not have produced additional relevant facts.

[0] The analogy to Rule 11 has its limits in this context. Some of the factors relevant to determining whether an attorney has made a reasonable pre-filing inquiry into the law, (e.g., whether the position taken was a good faith effort to extend or modify the law) are not particularly helpful in determining the reasonableness of a government attorney's research of the law during an ongoing criminal investigation. See e.g. Thomas v. Capital Security Services, Inc., 812 F.2d 984, 988 (5th Cir. 1987); Fed.R.Civ.Proc. 11, Advisory Committee Note; Lingle, supra, 847 F.2d at 95; Schering Corp. v. Vitarine Pharmaceuticals, Inc., 889 F.2d 490, 496 (3d Cir. 1989).

The district court found that Armenakis herself had not adequately researched the law. The court reasoned as follows:

> Armenakis' research, which consisted of reading and outlining the statute and reviewing the relevant annotations, was enough to give an average attorney a basic understanding of the law. However, standing alone, this limited investigation cannot be considered a normally competent level of research that a reasonably prudent attorney would undertake.

Second Remand, 830 F.Supp. at 255. We agree. Given the serious consequences which follow from the mistaken application of the Wiretap Act, i.e. suppression, a reasonable United States attorney should not be satisfied with a basic understanding of the Act and a summary review of applicable caselaw. In addition, as the district court reasoned, "the meaning of a complex statute, such as the Wiretap Act, is not always readily ascertainable from just the reading of the text; and the annotations often fail to fully reflect how caselaw has interpreted a statutory provision." Thus, Armenakis' research, standing alone, cannot be considered adequate. The inquiry, therefore, turns on whether Armenakis otherwise acted prudently.

The district court found that Armenakis acted as a reasonably prudent attorney, and based its conclusion on the "interaction between Armenakis' own research and the authoritative confirming advice she received from other, more experienced United States Attorneys." That is, Armenakis' research, standing alone was inadequate. This coupled with the confirmation of her initial understanding of the law by more

11

experienced colleagues, however, convinced the district court that Armenakis acted reasonably under the circumstances.[0]

We agree that when an attorney receives confirmation of legal theories from a number of proper sources, each consistent with the next, the attorney can act reasonably in relying on these theories in the course of legal research. The district court properly found that Armenakis' limited book research was inadequate. Moreover, her conversations with other attorneys, standing alone, were also insufficient. Carson, 969 F.2d at 1495 (an attorney may not rely merely on conversations with peers or supervisors concerning developing area of law where incorrect answer could lead to suppression of important evidence). However, we believe that the combined impact of these concurring sources created a degree of certainty (albeit minimal) which a prudent attorney could have accepted in arriving at an appropriate procedure for sealing.

From a factual standpoint, the caselaw as it existed at the time was not inconsistent with a reasonably thorough review

---

[0]We do not accept the district court's finding that Roth's view was the general understanding of the office. The court inferred this from the fact that Roth was Armenakis' supervisor during the Video Warehouse surveillance, and that Roth was the most experienced of any attorney in the United States Attorney's office in New Jersey with respect to interceptions. Second Remand, 830 F.Supp. at 256, n.6. We do not think it necessarily follows that Armenakis spoke to other attorneys with Roth's view. Since Roth would have counselled her to promptly seal the tapes after each location, such information might have better informed Armenakis about proper procedure. App. at 25. Nonetheless, we accept the finding that she spoke to more experienced colleagues, and that they confirmed her view of the law. We think it was reasonable for Armenakis to rely on these colleagues, whether or not Roth's view was the general understanding of the office.

of the relevant annotations.[0]  When Armenakis conducted her legal

research, no "red flags" would have appeared to warn her about

the need to seal the tapes as the investigation continued but the

location of the surveillance changed.  Our review of the relevant

annotations discloses no Third Circuit case which would have

definitively clarified this issue, or even notified Armenakis of

a conflict.[0]  In fact, cases from other circuits could have led

her in the opposite direction.[0]

---

[0]Just as we examined Armenakis' understanding of the law to
determine whether it was objectively reasonable at the time of
the delay, Ojeda Rios, 110 S.Ct. at 1851, we will also examine
Armenakis' conduct at the time of the delay to determine if it
was reasonably prudent attorney conduct. Cf. Schering Corp.,
supra, 889 F.2d at 496 ("the wisdom of hindsight is to be
avoided; the attorney's conduct must be judged by what was
reasonable to believe at the time the pleading, motion, or other
paper was submitted.")

[0]Of the few Third Circuit cases appearing in the relevant
portions of the Federal Digest, only the United States v.
Falcone, 505 F.2d 478 (3d Cir. 1974) appears to be even remotely
on point.  In that case, the court ruled that the tapes were not
sealed in accordance with the statute.  However, there was no
explanation of how or why the sealing failed to accord with the
statute.  The rule of law in Falcone, later overturned in Ojeda
Rios, was as follows:

>all we hold is that where the trial court has found
>that the integrity of the tapes is pure, a delay in
>sealing the tapes is not, in and of itself, sufficient
>reason to suppress the evidence obtained therefrom.
>We hasten to add that this holding, of course, does not
>deprecate the importance of the sealing requirement.
>Certainly, it should be complied with in all respects.
>As this case so aptly demonstrates, compliance would
>have avoided considerable uncertainty and delay.

Falcone, 505 F.2d at 484.  Instead of clarifying the meaning of
18 U.S.C. § 2518(8), we held that delays in sealing would not
result in suppression.

[0]See e.g. United States v. Principie, 531 F.2d 1132, 1142, and n.
14 (2nd Cir. 1976), cert. denied, 430 U.S. 905 (1977) (electronic
surveillance order entered 16 days after a prior order regarded
as an "extension" within the meaning of

An inquiry into the reasonableness of an attorney's legal research is necessarily fact and time specific. The court must take into account not only the particular methodology employed by the attorney, but also the complexity of the law at the time in question.[0] Armenakis' conduct is far from a model for others to follow and our ruling is, of course, limited to the facts and time frame of this case.

With its decision in Ojeda Rios, the Supreme Court significantly clarified the sealing requirements of the Wiretap Act and changed the caselaw which we use to help judge reasonable attorney behavior.[0] The Court admonished: "the seal required by

§ 2518 because it was considered part of the same investigation of the same individuals conducting the same criminal enterprise); United States v. Scafidi, 564 F.2d 633, 641 (2nd Cir. 1977), cert. denied, 436 U.S. 903 (1978) (where intercept is on same premises and involves substantially same persons, an extension under those circumstances requires sealing only at conclusion of whole surveillance).

[0]Due to the absence of controlling Third Circuit precedent, we cannot label Armenakis' conclusions "patently unmeritorious or frivolous." Only when an attorney offers such an implausible view of the law, in the Rule 11 context, would she be subject to sanctions. See Doering v. Union County Bd. of Chosen Freeholders, 857 F,2d 191, 194 (3d Cir. 1988); Dura Systems, Inc. v. Rothbury Investments, Ltd., 886 F.2d 551, 556 (3d Cir. 1989) (Rule 11 evaluation includes question of whether pleading was based on plausible view of the law).

[0]See Judge Easterbrook's opinion in Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928 (7th Cir. 1989), in which he observed:

> A lawyer who founds his suit on Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896), has revealed all we need to know about the reasonableness of the pre-filing inquiry...If the legal point is obscure, though, even an absurd argument may not be sanctionable, because a "reasonable" inquiry does not turn up every dusty statute and precedent. An objectively frivolous legal position supports an inference that the signer did not do a reasonable

§ 2518(8)(a) is not just any seal but a seal that has been obtained _immediately_ upon the expiration of the underlying surveillance order." _Ojeda Rios_, 110 S.Ct. at 1849 (emphasis in original).  Of additional significance is the clarification of the Wiretap Act provided by section 2518(11), added to Title III as part of the Electronic Communications Privacy Act of 1986, § 106(d)(3), Pub.L.No. 99-508, 100 Stat. 1848, 1857, _reprinted in_ 1986 U.S.Code Cong. & Admin.News.  This provision, which authorizes roving surveillance upon a showing that the suspect's purpose is to thwart interception by changing facilities, was passed in 1986 and plainly discredits arguments based upon the so-called "extension theory."[0]  See _Vastola II_, 915 F.2d at 874.

Vastola argues that _Carson_ compels a different result. The district court cited to _Carson_ for the proposition that an attorney's reliance on the counsel of more experienced colleagues can constitute reasonable attorney conduct.  See _Second Remand_, 830 F.Supp. at 256.  In _Carson_, the government attorney, Robins, did not immediately seal wiretap tapes after surveillance ended because he expected the same surveillance to begin again when the subject returned from a hospital stay.  Robins alleged that, like

amount of research, but an inference, no matter now impressive, is no more than an inference.
Mars Steel Corp. v. Continental Bank N.A., 880 F.2d at 932.
[0]The court in _Vastola II_ referred to the Electronic Communications and Privacy Act of 1986 in order to make a legal determination, based on the text of the statute, of the meaning of the Wiretap Act.  Since the amending provision was not passed until after the relevant conduct by Armenakis, it is evident that by referring to section 2518(11) the court in _Vastola II_ was not commenting upon the reasonableness of Armenakis' conduct in 1985. The court in _Vastola III_ remanded this matter to the district court for a determination of the reasonableness of her conduct.

15

Armenakis, he believed at the time that sealing was not necessary until the <u>entire</u> investigation was completed. Robins claimed that he asked his supervisor about the sealing requirements and had (mistakenly) understood his supervisor to explain that no sealing was required until all surveillance ended. The <u>Carson</u> Court found that Robins' legal conclusion regarding sealing was <u>not</u> objectively reasonable, but it remanded the case to the district court for consideration of whether Robins' reliance on what he thought the supervisor told him was reasonable without any additional, independent research. The court in <u>Carson</u> offered the following standards regarding an attorney's reliance on the counsel of colleagues:

> Arguably, a reasonable attorney would not have risked the exclusion of the tapes, evidence important to his case, without personally checking the law relating to its admission. <u>It is not always unreasonable for an attorney to rely on a reasoned oral opinion of a supervisor, or even that of a peer with more experience in the area of law in question</u>. Moreover, an attorney working under another lawyer on a case could not be faulted for following instructions, as opposed to advice, from the person in charge of the case or investigation. On the other hand, we do not think that a reasonable attorney can rely on a casual conversation with a peer or supervisor concerning developing law on a complex, controversial subject if an incorrect answer is likely to preclude admission of evidence of vital importance to the case.

<u>Carson</u>, 969 F.2d at 1495 (emphasis added).

The district court found that, like Robins in <u>Carson</u>, Armenakis relied on the opinions of her more experienced colleagues in formulating her opinion. But unlike the attorney in <u>Carson</u>, Armenakis did more here than merely rely on these

16

conversations.[0]  Her understanding of the law was supplemented by her reading and outlining of the statute and her review of the relevant annotations at that time.  Armenakis did, in fact, check the law in this case.  And her reading of the law confirmed her understanding (albeit a misunderstanding) that sealing was only required at the end of the investigation.  Thus, the Carson decision is authoritative but clearly distinguishable on its facts.

We recognize that the wiretap is a powerful and invasive law enforcement tool, and that the Wiretap Act was enacted to establish procedural safeguards which assure that "the interception is justified and that the information obtained thereby will not be misused."  Gelbard v. United States, 408 U.S. 41, 47, 92 S.Ct. 2357, 2361 (1972) (citations omitted).  Nonetheless, we hold for the reasons stated that the combined effect of Armenakis' conduct at the time in question was minimally sufficient to meet the standards of a reasonably prudent attorney.

## V.
## Conclusion

For the reasons set forth above, we conclude that the order of the district court should be affirmed.

---

[0]We note that the court in Carson did not decide the question of whether attorney Robins' reliance on what he thought his superior told him without independently checking the law might be reasonable.  Thus, Carson leaves open the possibility than a mere reliance on a superior's understanding of the law might be reasonable in certain circumstances.  Of course, in this case Armenakis conducted independent research in addition to her consultation with other, more experienced attorneys in the office.

17

United States of America v. Gaetano Vastola
No. 93-5529

STAPLETON, Circuit Judge, Dissenting:

If the government's evidence in this case is sufficient to carry its burden of providing a "satisfactory explanation" for failing to comply with the immediate sealing requirement of the statute, that requirement is reduced to a precatory entreaty. Because it is clear from Ojeda Rios that Congress intended something more, I respectfully dissent.

Wire surveillance of the Video Warehouse in West Long Branch, New Jersey, was authorized on March 15, 1985. After two extensions, the authority expired on June 13, 1985. The surveillance actually terminated on May 31, 1985. Wire surveillance of Video's new location in Neptune City, New Jersey, was authorized on June 26, 1985. That authority ceased and the surveillance was terminated on July 25, 1985.

Duplicates of 185 reels of tape from the West Long Branch surveillance were sealed 45 days after that surveillance ceased and 32 days after the authorization terminated. When the government realized its mistake, the originals of these reels of tape were sealed a little over a month later, on August 19, 1985.

The federal wire surveillance statute, after providing for court authorized wire surveillances, stipulates the following with respect to the making and sealing of tape recordings:
> The recording of the contents of any wire, oral, or electronic communication under this

subsection shall be done in such way as will protect the recording from editing or other alterations.  <u>Immediately upon the expiration of the period of the order, or extensions thereof,</u> such recordings shall be made available to the judge issuing such order and sealed under his directions.  Custody of the recordings shall be wherever the judge orders. . . .  The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

18 U.S.C. § 2518(8)(a) (emphasis supplied).

The tapes from the West Long Branch surveillance are the ones at issue here.  The government has not contended that a sealing involving a 32 day or longer delay would constitute an "immediate" sealing.  Rather, the government, in <u>United States v. Vastola</u>, 915 F.2d 865 (3d Cir. 1990), <u>cert. denied</u>, 498 U.S. 1120 (1991) ("<u>Vastola II</u>"), advanced two alternative theories under which there was said to be no violation of the statute.  First, it insisted that there had been no delay because the order of June 26, 1985, authorizing surveillance of the Neptune City site, was an "extension" of the original authorization, and the duty to seal did not arise until the Neptune City surveillance terminated.  We rejected this argument, concluding:

> We could not possibly hold that the Neptune City interception order was an extension of the West Long Branch order.  Although the government rightly points out that <u>Rios</u> [<u>United States v. Ojeda Rios</u>, 495 U.S. 257 (1990)] did not decide whether a change in the location of an illegal operation will prevent a subsequent order covering the new location from being an extension of a

20

> previous order, the statute unambiguously
> rules out this possibility.

Id. at 874 (footnote omitted).

In support of this conclusion, we referred to the above quoted portion of the statute and two other sections requiring that an application for wire surveillance authority justify the need for surveillance at a specific site: Section 2518(1)(b)(ii) plainly states that an an application for surveillance order must contain 'a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted.' In addition, section 2518(3)(d) requires a particularized showing of probable cause that 'the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in the commission of [the] offense [under investigation].' Based on these two provisions alone, we would have no difficulty concluding that Congress intended for interception orders, and their accompanying extensions, to apply only to surveillances in the particular locations specified in the applications.

Vastola II, 915 F.2d at 874.[0] We held, based on the plain meaning of the text of the statute, that the duty to seal arises "upon the expiration of the order or extensions thereof" and that an order authorizing surveillance at another site is not an extension.[0]

_____

[0]As the majority correctly points out, we also referred to a 1986 statutory amendment authorizing roving surveillance upon a showing that the suspect's purpose is to thwart interception by changing facilities. The "unmistakable inference" to be drawn from this amendment, we held, was that the other provisions of the statute "restricted surveillance to particular locations, regardless of whether the same suspects and crimes were involved." Id. at 875. The above quoted text leaves no doubt, however, that our conclusion would have been the same in Vastola II if we had confined our analysis to the text of the statute as it existed prior to this amendment when the surveillances in this case were conducted.

[0]2. During our analysis of the plain meaning of the text in Vastola II, we pointed out that the Second Circuit case law existing at the time of the surveillance in this case did not support the view that a new authorization for surveillance at a different location could constitute an extension of a prior authorization for another site. We noted and rejected the government's contention that United States v. Vazquez, 605 F.2d

Having concluded that the duty to seal the West Long Branch tapes arose no later than June 13, 1985, the date the authorization for the surveillance of that location terminated, we turned to the government's second argument -- i.e., its "suggestion that, even if erroneous, the supervising attorneys' reasonable belief that the order of June 26, 1985, extended the original interception order satisfactorily explains the delay" in sealing the West Long Branch tapes. Id. at 875. We declined to pass upon this argument because the government up to that point had tendered no evidence to the district court concerning the circumstances of the sealing delay. We remanded to the district court so that it could exercise its discretion on whether to

---

1269 (2d Cir. 1979), cert. denied, 444 U.S. 981 (1979), stood "for the proposition that the term, 'extension,' encompasses all continuation of wiretap orders involving the same crimes and substantially the same people." 915 F.2d at 874 n. 15. We indicated that "[w]e would be hard pressed to read Vazquez so broadly." Id. The Vazquez court summarized the state of the law in the Second Circuit in 1979 as follows:

> Therefore, we conclude that the term "extensions," as used in the phrase "period of the order, or extensions thereof" is to be understood in a common sense fashion as encompassing all consecutive continuations of a wiretap order, however designated, where the surveillance involves the same telephone, the same premises, the same crimes, and substantially the same persons. See United States v. Scafidi, supra, 564 F.2d at 641; cf. United States v. Principie, 531 F.2d 1132, 1142 n. 14 (2d Cir. 1976), cert. denied, 430 U.S. 905 (1977).

Vazquez, 605 F.2d at 1278. It is thus clear that the Court of Appeals for the Second Circuit does not read its case law in the same way the majority reads it in footnote 8, supra.

22

reopen the record and allow the government to offer such evidence.

Between Vastola II and the time this case returned to us in Vastola III, we had occasion to consider another case in which a sealing delay had occurred in the context of sequential surveillance of different sites. United States v. Carson, 969 F.2d 1480 (3d Cir. 1992). The investigation in Carson was conducted in 1981 and 1982. An evidentiary hearing was held by the district court in that case at which Warren Robins, the attorney who had caused 33 of the tapes of the first, "Zax", surveillance to be sealed, testified. His testimony was summarized as follows:

> Robins discussed the sealing issue with Stewart, his supervisor, during the time in December 1981 when DiGilio was in the hospital. Although Stewart meant to convey that sealing was required at the end of a particular order or its extension, Robins understood him to mean that sealing was required only at the conclusion of the investigation, rather than at the end of interception at a particular location. Robins' misunderstanding of Stewart's advice arose, because at the time of their discussion the Zax order [authorizing the first surveillance] constituted the entire electronic surveillance operation.

* * * *

> As a result, Robins believed that the sealing obligation for all of the tapes, including the Zax tapes, arose on May 12, 1982 when the [second] surveillance was terminated.

* * * *

23

> Robins therefore thought that so long as any part of the "wiretap interception process" was occurring, there was no requirement to seal--even if a particular wiretap operation which was a part of the investigation was complete.

Id. at 1493-95.

The district court in Carson concluded "that Robins' view, though wrong, was objectively reasonable and that, therefore, the government provided a satisfactory explanation for the delay." Id. at 1494. We rejected this conclusion based on Vastola II, explaining:

> In reaching this conclusion, the court accepted Robins' explanation even though it was contrary to the unambiguous language of the statute. See id. at 494 (quoting Vastola II, 915 F.2d at 874).
>
> We agree with the district court that a reasonable mistake of law can be a satisfactory explanation for delay, but we also think the district court's findings do not support its conclusion that Robins' explanation was satisfactory. For an explanation to be satisfactory under Ojeda Rios, it must be objectively reasonable. . . . The government does not, and cannot, argue that an objective reading of the extant case law might have caused an objectively reasonable attorney to take Robins' view.

Id. at 1494 (footnote omitted).

Although the government did not maintain that the case law would have "caused an objectively reasonable attorney to take Robins' view" on February 27, 1982 (when the final extension of the authority for the first surveillance terminated and the duty to seal was triggered), the government in Carson did insist that it had satisfactorily explained the delay by showing that "it was

24

attributable to an innocent mistake on Robins' part in misunderstanding what Stewart told him." Id. at 1494. We acknowledged that it was possible for the government to have a "satisfactory explanation" even though it acted on the basis of an objectively unreasonable view of the law. We held, however, that the district court's findings would not support the view that the delay occurred "without any fault on the government's part." Id. at 1494. We observed:

> Robins said his conclusion that the sealing
> requirement was not triggered until all
> surveillance ended was based on a
> misunderstanding of Stewart's oral advice on
> the sealing requirements. The district court
> made no finding as to whether Robins could
> have reasonably understood Stewart as telling
> him no sealing was required until all
> surveillance ended or whether it was
> reasonable to rely on what Stewart told him
> without any independent research. If a
> reasonably prudent lawyer could have
> interpreted Stewart's statements as Robins
> did and, under all the circumstances,
> reasonably relied on them without any
> independent investigation of the law, Robins'
> explanation as to the March 9, 1982 delay
> would be an objectively reasonable mistake of
> law that satisfactorily explains the
> government's failure to meet the statute's
> requirement of immediate sealing. Affirmative
> answers to those two questions of fact are
> necessary to a determination that Robins'
> mistake of law was objectively reasonable. .
> . .

Id. at 1494.

We ultimately remanded the Carson case to the district court to determine "whether Robins' explanation was satisfactory and objectively reasonable." Id. at 1501. In doing so, we made

25

the following cautionary observations that are very pertinent here:

> The circumstances of this case may show that Robins had an affirmative duty to do more than rely on the advice of his superior. Arguably, a reasonable attorney would not have risked the exclusion of the tapes, evidence important to his case, without personally checking the law relating to its admission. It is not always unreasonable for an attorney to rely on a reasoned oral opinion of a supervisor, or even that of a peer with more experience in the area of law in question. Moreover, an attorney working under another lawyer on a case could not be faulted for following instructions, as opposed to advice, from the person in charge of the case or investigation. <u>On the other hand, we do not think that a reasonable attorney can rely on a casual conversation with a peer or supervisor concerning developing law on a complex, controversial subject if an incorrect answer is likely to preclude admission of evidence of vital importance to the case</u>. . . .

Id. at 1495 (emphasis supplied).

Carson, like Ojeda Rios, makes clear that the government bears the burden of persuading the court that its explanation is "satisfactory."

On remand from Vastola II, the district court allowed the government to introduce additional evidence concerning the circumstances of the surveillance and the sealings. Based on that evidence, the district court concluded that "the actual reason for the sealing delay was that the government attorneys in charge of the surveillance believed that sealing was not required until after the entire investigation." More specifically, Assistant United States Attorney Armenakis, the decision maker in

26

this case, had "form[ed] the same mistaken belief held by Attorney Robins in Carson." United States v. Vastola, 989 F.2d 1318, 1323 (3d Cir. 1993) ("Vastola III").

In Vastola III, we, of course, held that Armenakis' view of the law was not "objectively reasonable." Id. at 1327. This holding was required by Carson and, indeed, was the law of the case in this proceeding after Vastola II. Those cases establish that a reasonable attorney who had reviewed the text of the statute with even a minimal degree of care could not have reached the conclusion that Armenakis did.

Since the record supported the finding that Armenakis' view of the law was the "actual reason" for the sealing delay, if that view had been objectively reasonable, that would have ended the matter in the government's favor; there would have been no occasion to inquire into the historic facts of how Armenakis reached her conclusion. This court's conclusion that her view was not objectively reasonable did not end the matter in the defendant's favor, however, because the government contended that Armenakis, even though wrong, acted reasonably under all the circumstances in reaching her erroneous conclusion. Relying on Carson, we held that this was a tenable position for the government to take, but concluded that the district court had not made the findings necessary to sustain it. We remanded so that the district court could "determine whether Armenakis conducted herself reasonably under the circumstances." Id. at 1327.

On remand from Vastola III, the parties stipulated that the existing record was adequate to enable the district court to

27

make the required findings. That record consisted of a hearing at which Armenakis and her immediate supervisor, Thomas Roth, testified. Roth testified that he recalled no conversation with Armenakis regarding the sealing of the tapes in this case. While not required under his understanding of the law in the spring of 1989, if he had been asked by Armenakis, he would have counseled that "the more prudent way to do it, and the way [he] always did it [was to seal] when any particular facility was terminated." Appendix at 25.

Armenakis testified that she had had no prior experience with wire surveillance and that she received no formal training in that area with respect to this case. Her _entire_ testimony with respect to how she reached her view of the law on sealing was as follows:

> Q. Did it occur to you to seal the interceptions that had commenced in March and had ceased at the end of May at Video Warehouse, One, I'll call it?
>
> Did it occur to you at any point along the way?
>
> A. Well, yes, at some point it did occur to me, yes.
>
> Q. What was your understanding at that time as to what you were required to do in terms of sealing?
>
> A. My understanding was that when the investigation was completed that you immediately sealed whatever tapes had been obtained.
>
> Q. From what did you get that understanding?

A. Well, when I began working on the investigation I studied the statute and several of the annotations. I spoke with more experienced attorneys in the office on wiretaps and it was, it was my understanding, which appeared to be consistent throughout the office. A. 55-56

* * * *

Q. Did you speak to Mr. Fettweis during May or June regarding what your sealing obligations were?

A. I had a conversation with someone. Frankly I don't recall who it was. It may have been Mr. Fettweis because I had asked him questions throughout the investigation. I did speak with someone concerning the issue of sealing when the agent raised it. I don't recall who it was. A. 88.

* * * *

Q. You testified that your understanding of the sealing requirement was based on part on the statute itself; is that correct?

A. Yes.

Q. I would like to show you defendant's exhibit A in evidence?

MR. WHITE: If I may approach the witness?

THE COURT: Yes.

By Mr. White:
Q. And ask you to look at -- do you know what defendant's exhibit A is?

A. It's a portion of the statute 2518. It may be the entire statute.

Q. Yes, it is the entire statute. A. 89.

* * * *

29

Q.   Have you looked at the statute --
would you agree with me that it does not
support your understanding that in 1985, that
tapes didn't have to be sealed until the end
of an entire interception where there had
been change of premises and the second series
of interceptions was not an extension?

A.   I think the answer is, no, I would
not agree with you.  The statute was the same
then and it was my understanding and I truly
felt that it was the interpretation of other
assistants that this statute meant the end of
the investigation and that is what I
understood to be the case.

Q.   Did you rely on the interpretation
of other assistants for that conclusion?

A.   I felt that my beliefs were
consistent with those, those who I went to
who had conducted wiretaps, yes.

Q.   You relied on, for your conclusion,
on what their perception of the statute was?

A.   Not completely, but it but, in part,
yes.

Q.   You also relied on your own reading
of the statute?

A.   Yes and the annotations at the time.
I don't recall exactly.  A. 90-91.

* * * *

Q.   I believe your testimony was that
Agent Mahoney notified you that the tape
custodian at the F.B.I. had noticed the
change in the numbers and brought that to his
attention?

A.   Yes.

Q.   You consulted with some people about
what you should do?

A.   Yes.

30

Q.  After the consultation, it was indicated to you you should seal those tapes?

A.  That it would probably be better to seal them.

Q.  Did anyone -- how many people did you consult with, do you have any idea?

A.  No, I don't recall exactly.

Q.  Did anybody indicate to you you better get those sealed?

A.  No.  A. 99.

The district court concluded that Armenakis "acted reasonably under the circumstances."  While "reading and outlining the statute and reviewing the relevant annotations" could not be "considered a normally competent level of research that a reasonably prudent attorney would undertake," the district court believed the "critical aspect in this case [was] the interaction between Armenakis' own research and the authoritative confirming advice she received from other, more experienced United States Attorneys in her office."  Appendix pp. 10-11.

I would conclude that the record will not support the district court's conclusions that Armenakis acted reasonably under the circumstances and, accordingly, that the government's explanation is not "satisfactory" as that term has been interpreted by this court and the Supreme Court in Ojeda Rios. To hold that this record suffices to carry the government's burden under Ojeda Rios would effectively eliminate that burden and would ill serve the privacy concerns underlying the sealing requirement of the statute.

The district court properly considered the extent of Armenakis' personal investigation into the law. The degree of effort she put into that investigation is one factor to be considered in determining whether she behaved reasonably. On the other hand, her efforts have to be evaluated in light of the fact that the text of "the statute unambiguously rules out" the conclusion she reached, as we noted in Vastola II, 915 F.2d at 874. For this reason, I agree with the district court that Armenakis' personal investigation of the legal issue involved will not support a finding of reasonableness.

This leaves Armenakis' testimony that she consulted others in the office whose identity she cannot now recall, at times she cannot now recall, and under circumstances that she cannot now recall. While I do not fault Armenakis for being unable to recall in December of 1990 what she did in the spring of 1985, the indefiniteness of her testimony precludes anyone from determining anything about the circumstances under which she relied upon the advice of others. One can tell nothing, for example, about what she told her allegedly more experienced peers as a factual predicate for the solicited opinion, whether she inquired over lunch or in a more structured context, whether the opinions provided by the peers were tendered immediately off the top of their heads or after reasoned analysis, and whether or not Armenakis inquired concerning the basis for their proffered views. The government's evidence simply does not permit the kind of inquiry we insisted upon in Carson. As a result, we do not know whether this is a case involving "a reasoned oral opinion of

32

a . . . peer with more experience," or a mere "casual conversation."  Carson, 969 F.2d at 1495.

In order for the government's explanation to be "satisfactory" in a situation like this, a determination that the advice received by the decision maker from others was reasonably relied upon requires far more specific support than the government supplied here.  Accordingly, I would hold that the government did not carry its burden of demonstrating that Armenakis acted reasonably under all of the circumstances.

The government has argued throughout the extended history of this case that the admission of the 185 reels of West Long Branch surveillance, if error, was harmless error.  It renews that contention before us and suggests that we should determine that issue without further help from the trial judge.  This suggestion has some appeal because the parties would understandably like to bring this case to a close.  I would decline, however, to accept this invitation.  As we noted in Vastola II, "if the tapes should have been suppressed, the extent of the damage to the government's case could not easily be assessed."  915 F.2d at 877.  The trial judge, who heard the very extensive evidence against Mr. Vastola, is in a far better position than we to assess that damage, and I would solicit his help in doing so.

I would remand with instructions to decide the harmless error issue and to grant a new trial if that issue is determined in Mr. Vastola's favor.